THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
ISIDRO PRIETO VÉLEZ, Defendant and Appellant.

No. CR-63-36.    Decided February 2, 1966.

*Edna Abruña Rodríguez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Adaljisa Díaz de Collazo, Assistant Solicitor General,* for The People.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Appellant was convicted by a jury of the crime of murder in the first degree, perpetrated upon committing a burglary, and sentenced to life imprisonment. Moreover, the court without a jury found him guilty of carrying prohibited weapons and sentenced him to serve six months in jail.

In the first two assignments appellant maintains in this appeal that the trial court erred (1) in failing to instruct the jury that the only witness for the prosecution who incriminated the defendant was an accomplice; (2) in omitting instructions as to the need of corroboration of accomplice; and (3) in not ordering a direct verdict of acquittal for insufficiency of evidence.

These errors were not committed. Let us see.

As of September 2, 1961, defendant-appellant had been living in concubinage for a month with Epifania Padilla Náter in the town of Cataño. At about seven o'clock in the evening of that Saturday, September 2, appellant arrived at his house under the influence of intoxicating liquor. He came from Buchanan, where he worked. He started fighting with Epifania whom he had locked up in the house where they lived. Epifania stated: "He began beating me and I jumped

out and fled." She went out walking along the streets of Cataño and went into some bars to drink beer. When she was leaving from *Bar Casino* she met defendant and he asked her for money. When she told him that she had no money, he threatened her by placing a curved knife on her throat and he said: "keep walking because if I encounter man or woman I'll cut his throat", "for I am going to a place where I am sure I will find money." Defendant also told her that he wanted the money for drugs. That was happening at half past two in the morning. They reached the *Parque de Bombas* near the Cataño Ferryboat Terminal. There they found Yeyo, a habitual drunkard, asleep. Epifania was about to touch Yeyo but the defendant told her: "Do not touch him or I'll cut your throat and Yeyo's too." The defendant entered then through a window into the house which is used as the ferryboat station. Meanwhile Epifania remained at Yeyo's side. Yeyo continued sleeping because "he told me not to call Yeyo nor to go away or else he would cut my throat." At about an hour later the defendant came out the door of the ferryboat station with his clothes and hands stained with blood. He carried some brown paper rolls containing dimes. Epifania stated that the defendant then pushed her forward towards the place where the dead man was and told her: "as I cut his throat, I can cut yours" and that if she screamed or informed against him "he would leave me as he left him, dead." Then the defendant told Epifania that he was going to wash his hands in the sea and while he did so, she fled away running and reached the house of a friend who let Epifania spend the rest of the early morning with her. Epifania also stated that she did not inform the police immediately what had happened because she feared the defendant would kill her. Juan Correa López, Ferryboat Traffic Supervisor of the Ports Authority went to the Cataño ferryboat terminal when he was informed that the watchman, Venancio Cabrera, had been killed. He found the latter with his "throat cut" on the

floor, face upward, near the turnstile. He noticed that the money he had left the day before in a wooden box and the money which must be in the turnstile was missing.

Dr. Juan Velázquez performed the autopsy on the body of Venancio Cabrera. It showed an incisive wound in the anterior part of the neck which had slit both jugular veins. The cause of the death was "a massive hemorrhage mainly external and, of course, due to blood aspiration within the trachea."

The theory of the defense was that the defendant, the night of the crime, was at his home and that he had not committed any crime. He introduced as witness prosecuting attorney Juan Lorenzo Rodríguez, who testified that one day Epifania, accompanied by defendant's brother, came to his office in Santurce to tell him that she wanted to change her testimony because what she had testified in Bayamón was not true; that Epifania was under the influence of intoxicating liquor and that the one who had the say in the conversation was defendant's brother; that to everything the former said she answered yes; that he (the prosecuting attorney) called the prosecuting attorney's office of Bayamón to refer the case and that Epifania did not make a sworn statement before him.

On the witness stand Epifania had already testified that defendant's brother, Juan Vélez Prieto, threatening her with a revolver, had taken her to the prosecuting attorney's office to change her testimony. It does not appear from the record that said witness had made a second written statement amending the first one.

Fulgencio Cruz Casillas, who had previously cohabited with Epifania, testified also as a witness for the defense. Since the bases had not been laid down, the witness was not allowed to relate a conversation he had with Epifania after the death of the watchman, Venancio Cabrera.

That was all the evidence introduced in support of the theory of the defense.

■ Although in the record there is some evidence which corroborates Epifania's testimony, we have not stopped to relate it because in our opinion said witness is not an accomplice. This Court has decided that for the purposes of the necessity for corroborative evidence, an accomplice is one who willfully and knowingly—without coercion—voluntarily and with intent, somehow joins in the commission of a crime, being therefore liable to prosecution for the same offense. It is essential that the accomplice be subject to prosecution for the same offense as the person accused. *People* v. *Montalvo*, 83 P.R.R. 700 (1961). See also, *People* v. *Adorno*, 81 P.R.R. 504 (1959) and *People* v. *Rodríguez Hernández*, 91 P.R.R. 176 (1964). Although the witness, Epifania Padilla, accompanied the defendant until he was near the place where he committed the crime of murder while committing burglary, she did it against her will and under threat of death. Her testimony to that effect was not contradicted and in the absence of evidence to the contrary, she was not liable to prosecution for the same offense committed by the defendant. Her mere presence while the offense was committed is not sufficient in itself to sustain a conviction. *Cf. People* v. *Wooten*, 328 P.2d 1040; *State* v. *Pundy*, 156 A.2d 193; *Snowden* v. *State*, 165 So. 410; *Head* v. *Commonwealth*, 310 S.W.2d 285; but even if she had participated in the commission of the offense against her will, because of the death threats made by her concubine, she would not be an accomplice. *People* v. *Rosado*, 72 P.R.R. 773 (1951).

■ On the other hand, there is no evidence that between Epifania and the defendant prior acts had taken place which would reveal the existence of a conspiracy or a common intent to carry out the criminal act committed by defendant, in which case she would have been likewise liable for the offense

committed and, therefore, an accomplice. *Cf. People* v. *Aponte,* 83 P.R.R. 491 (1961) ; *People* v. *Lewis,* 248 P.2d 461.

■ As to the sufficiency of the evidence, it suffices to say that the evidence of the People shows beyond a reasonable doubt that the defendant was the author of the offense charged by the prosecuting attorney.

The third error challenges the admission in evidence of a curved knife (jackknife) seized by the police in the house of the defendant when they went to summon him to appear before the prosecuting attorney.

■ The said knife was identified by Epifania as the weapon that defendant carried on his person along the streets of Cataño in the early morning of the events and with which weapon he threatened her. The evidence as a whole tends to establish the fact that with said weapon, defendant killed the watchman of the Ferryboat Terminal in Cataño. Epifania was very well acquainted with the weapon for she had seen it at her house and in defendant's possession on numerous occasions. Even suppressing the said knife from the evidence, the rest of the proof is sufficient to establish its carrying by the defendant in the early morning of the day of the crime. To sustain the violation of the Weapons Law, under the circumstances of this case, it was not necessary to introduce the jackknife in evidence. *People* v. *Garcés,* 78 P.R.R. 95 (1955) ; *People* v. *De Jesús,* 65 P.R.R. 877 (1946) ; *People* v. *Blanco,* 68 P.R.R. 862 (1948).

■ With regard to the fourth and last error, consisting in that the judge sentenced the defendant for contempt in the presence of the probable jurors who would sit at his trial, for not having appeared on time before the court, it suffices to say that the defendant has not shown us that said incident prejudiced his substantial rights and that the same merits the reversal of the judgment, particularly when there was no objection or exception on the part of the defendant nor

did he request any remedy to prevent that the incident could prejudice him, if that was his belief. *Cf. People* v. *Rivera,* 83 P.R.R. 452 (1961).

The judgments appealed from will be affirmed.