[Crim. No. 6171. Second Dist., Div. One. Aug. 18, 1958.]

THE PEOPLE, Respondent, v. CLYDE WOOTEN, JR., et al., Defendants; WALTER BRADLEY GELDER, Appellant.

806

Joseph R. Grillo for Appellant.

Edmund G. Brown, Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendants were accused of the crime of assault by means of force likely to produce great bodily injury, in violation of Penal Code, section 245. Appellant entered a plea of not guilty and when the cause was called for trial a jury trial was duly waived. Appellant was adjudged guilty of the crime charged against him. His motion for a new trial was denied. Proceedings were suspended and appellant was granted probation on certain conditions. From the "Judgment" (Pen. Code, § 1237, subd. 1), and from the order denying his motion for a new trial appellant prosecutes this appeal.

We regard the following as a fair epitome of the factual situation surrounding this prosecution. On August 9, 1957, Thomas Phillips was walking along Bryson Avenue in the city of South Gate, Los Angeles County. He noticed one Gary Masters drive by in an automobile. Later, Masters returned in his automobile, and while he did not know how many persons alighted from the vehicle, Phillips did see appellant and his two codefendants get "out of the car." The record reveals that the complaining witness Phillips had acted as an informant for the narcotics squad of the sheriff's office in connection with one Bryan Lord and a Howard Chambliss. The complainant testified that as to the acquaintance of appellant with the men just mentioned, "I have seen him around Lord; I have never seen him with Chambliss."

When the occupants of the automobile alighted as aforesaid, they approached the complaining witness. According to the testimony of Mary Eyster, "it looked like four boys got out and run across the street." Defendant Clyde Wooten stood in front of Mr. Phillips and said, "I hear you ratted on me." Phillips replied he would call the police "if anybody started anything." Thereupon, Phillips was struck "more than one time" about the face and "all over my back and my neck." The complainant testified he did not know which of the men actually struck him. When he fell down he was kicked a

couple of times while appellant and defendants Wooten and Rose were near him.

According to the testimony of Mrs. Mary Eyster who lived across the street on Bryson Avenue and witnessed the fight, "I thought I saw that boy (appellant Gelder) with his hand around his (Phillips) neck." The witness also testified, "I thought that (defendant Wooten) was the boy that did the kicking, but it seemed to me that his hair was lighter than what it is now." During the further direct examination of this witness, the following occurred:

"Mr. Lenoir (Deputy District Attorney): Although you may or may not be able to say what each boy did specifically, you are able to say whether or not all three of the boys participated in beating the one boy?

"The Witness: Yes, sir.

"Mr. Lenoir: Did that happen?

"A. It did.

"Mr. Lenoir: That is all.

"Q. By Mr. Grillo (attorney for appellant): Mrs. Eyster, one of the reasons that you say these boys participated is the fact that you see them here now in answer to this crime, right? Try to be honest with yourself, the court and these defendants. The day after this happened, would you have been able to recognize either of those five or six boys that took part in that incident?

"A. No.

"Q. You would not and the only reason you recognize them now is because they are here and you know they took part in that incident, right?

"A. That's right."

While the assault upon him was in progress, the complaining witness heard a lady from across the street state that she had the license number of the car and she was calling the police. After this statement, appellant Gelder, Wooten, Rose and the two other occupants got in the car and left the scene. The license number she took was LML-748.

The foregoing events took place about 11 o'clock in the morning. About one-half hour later the complaining witness received a telephone call. The latter did not recognize the voice of his caller. The telephone message to Mr. Phillips was: ". . . if I reported it to the police, I would get killed next time." The complaining witness testified that just prior to the preliminary examination, he asked appellant Gelder who made the telephone call and the latter stated that "they

made a telephone call" and that one Masters actually "made the call," from the home of Richard L. Mataisz where appellant and defendants Rose and Wooten went after the altercation.

Sworn as a witness for the defense, Gary Masters, a 16-year-old boy, testified that he was the driver of the automobile here in question. That at no time prior to August 9th (date of the fight) did he or any of the other men "talk about or plan to hit Tom Phillips." That on the morning in question when the witness arrived, Richard Mataisz was washing the latter's automobile and appellant was assisting him. That appellant had on a pair of blue denims and a T-shirt, but no shoes. That when the witness arrived he said, "Tom Phillips is down there. Let's go talk to him." That defendant Wooten then said, "I want to talk to him because Richard (Mataisz) had said he (Phillips) had said some things about me." The remainder of the testimony of this witness as to the ensuing events was substantially the same as that testified to by Richard L. Mataisz, appellant Gelder and his codefendants Wooten and Rose, and which may be summarized as follows. The four boys had planned to leave to obtain something to eat after washing the automobile. After Gary Masters arrived, and following defendant Wooten's statement as aforesaid, the boys finished washing the automobile, and left with the announced purpose of defendant Wooten and Mataisz talking to the complaining witness Phillips. There was no talk of hitting, striking, or beating of Tom Phillips. Upon arriving where Tom Phillips was, Richard Mataisz and Clyde Wooten got out of the car, one on each side thereof, and when they were halfway or almost up to the curb, appellant Walter Gelder and defendant James Rose left the car. And up to this time there was no talk of beating, hitting or striking Tom Phillips.

When defendant Wooten and Phillips came face to face, Wooten accused Phillips of saying things about him; Phillips denied it; Richard Mataisz called Tom Phillips a liar and then hit him. At this point defendant Rose came upon the immediate scene, thought Phillips was going to hit him and Rose swung first, "throwing two to five blows"; thereupon appellant Walter Gelder grabbed Tom Phillips, defendant Clyde Wooten grabbed James Rose, and were in the process of pulling Rose and Phillips apart when Mrs. Eyster started to yell. The boys then ran back to the car, defendant Clyde Wooten still holding and pushing defendant James Rose back to the car.

The defense witnesses further testified that appellant Gelder did not "throw" any blows at the victim, did not hit, punch or threaten him, did not kick him, did not know Gary Masters, and had met but did not go around with James Rose. That as a result of an injury received in an automobile accident approximately one year before the fight, appellant Gelder is unable to make a tight fist with his left hand but is right-handed; that except for previous conversation between Mataisz and Wooten, none of the boys had ever discussed Tom Phillips, his being beaten or hit or assaulted among themselves; that although some of the six boys involved did know some of the others, not one knew all five others; that there was no plan of action, concerted activity, or conspiracy behind the events leading up to the fight with Tom Phillips.

As his first ground for reversal of the judgment and order, appellant Gelder earnestly insists that the judgment of conviction is against law in that there is no evidence from which it can legally be concluded or inferred that appellant was a principal in the commission of the offense charged.

Insofar as here pertinent, a principal is thus defined by section 31 of the Penal Code:

"All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission."

We are therefore confronted with the question whether the evidence reasonably justifies the conclusion that appellant joined the group and was present for the purpose of assisting in the consummation of the assault upon Mr. Phillips. ▪ A person cannot be characterized as a principal simply because he is present while a crime is perpetrated provided he takes no part in it. ▪ He must render aid to the actor and share the criminal intent of him or those who actually committed the offense to render him an abettor. ▪ And, though it be the theory of the prosecution that there was a common unlawful purpose between the actual offenders and the person abetting their actions, the latter is guilty only when his acts are done in pursuance of the unlawful scheme, and when, in addition to being present, he actually aided and encouraged the perpetrators with knowledge of the felonious intention (*People* v. *Luna*, 140 Cal.App.2d 662, 664 [295 P.2d 457]; *People* v. *Hill*, 77 Cal.App.2d 287, 293, 294 [175 P.2d 45]). If, as contended by appellant, he was so to speak, a mere bystander, whose only activity was an attempt to stop the fight

then, of course, he was not an accessory to a principal in the felonious assault upon Phillips. However, primarily, and as a factual matter, whether appellant was a bystander and acted only to preserve the peace, or was a participant, was for the duly authorized arbiter of the facts to decide. The sole question on appeal is whether the determination of that factual matter finds support in the evidence and the reasonable inferences to be drawn therefrom. █ In that regard, the prevailing rule is thus stated in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778] :

". . . The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. █ For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. █ The determination of a charge in a criminal case involves proof of two distinct propositions: First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . █ We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' █ If the *circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.*" (Emphasis added.)

(See also *People* v. *Perkins,* 8 Cal.2d 502, 518, 519 [66 P.2d 631] ; *People* v. *Daugherty,* 40 Cal.2d 876, 885, 886 [256 P.2d 911] ; *People* v. *Cullen,* 37 Cal.2d 614, 625 [234 P.2d 1].)

█ In the case at bar there is evidence that Thomas Phillips had acted as an informant for the sheriff's narcotic squad in connection with two men, one of whom was known to appellant, and both of whom were acquainted with the codefendants. One Gary Masters drove by in an automobile while Phillips was walking on the sidewalk. Masters pro-

ceeded to the home of Richard Mataisz where the latter and appellant were washing Mataisz's automobile. Upon Masters' arrival he announced that he had seen Phillips as aforesaid. Thereupon defendant Wooten announced, "I want to talk to him because Richard (Mataisz) had said he had said some things about me." After concluding the car washing job, appellant and the other four boys left, as stated by appellant in his brief, "with the announced purpose of (defendant) Wooten and Mataisz talking to Phillips." When they encountered Phillips, appellant and at least two others left the automobile and approached Phillips. Defendant Wooten stated to Phillips, "I hear you ratted on me," and thereupon Phillips was struck from one side, and, as stated by the witness Mary Eyster, "They all ganged up on him, I thought." This witness placed defendants Wooten and Rose on either side of Phillips, and placed appellant behind Phillips with his hand around the latter's neck. This would seem to amount to more than mere presence of appellant at the scene of the altercation. The testimony of the complaining witness shows that he was set upon by at least three of the men, struck with a fist, and kicked in the back, neck and stomach. It has been held that, ". . . Where persons are not actors in the actual commission of the crime charged, but aid and abet others in its commission or procure others to commit the crime, all are equally guilty." (*People* v. *Cowan,* 38 Cal.App.2d 231, 239 [101 P.2d 125].)

 In this state of the evidence, could the trial judge reasonably indulge in the inference that there was concert of action and purpose between the assailants of Mr. Phillips, including appellant, and that the latter concededly present, stood by prepared to take a hand in the assault and aggressively entered into it when he thought the proper time had arrived for his intervention? We are satisfied the answer must be in the affirmative.

Section 1958 of the Code of Civil Procedure defines an inference as, ". . . a deduction which the reason of the jury makes from facts proved, without an express direction of law to that effect."

And section 1960 of the same code provides:

"When An Inference Arises. An inference must be founded:

"1. On a fact legally proved; and,

"2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature."

Weighed in the crucible of both law and reason, and in the light of the code section just quoted, we are persuaded that under the facts and circumstances of the instant case, the only reasonable inference to be drawn therefrom is that those involved in the assault here under consideration, banded themselves together to punish Phillips because he "ratted" on two friends of theirs, and to deter Phillips from further activity as an informer for law enforcement agencies. Having in mind "the usual propensities or passions of men," it would do violence to reason and challenge credulity to conclude that appellant and his associates intended merely to "talk" to Phillips, and "peacefully" remonstrate with him on the evils of violating the established code of "ethics" of the "underworld."

Appellant next sets forth the statement of the trial judge that, "We really treated this matter as a conspiracy on the part of all these boys." He then challenges the sufficiency of the evidence to support the existence of a conspiracy. Appellant's contention that the record is barren of any *direct* evidence which would support the existence of a conspiracy was answered by our Supreme Court in the recent case of *People* v. *Osslo,* 50 Cal.2d 75, wherein it is stated, at p. 94 [323 P.2d 397]:

". . . It is true that there is no *direct* evidence of a conspiracy; all the direct evidence bearing on the question is to the effect that the defendants who actually participated in the assault and battery had been instructed to avoid the use of violence. But 'A conspiracy can generally be established only by circumstantial evidence. It is not often that the direct fact of a common unlawful design can be proved other than by the establishment of independent facts bearing on such design.' (Cases cited.)"

(See also *People* v. *Robinson,* 43 Cal.2d 132, 136 [271 P.2d 865]; *People* v. *Steccone,* 36 Cal.2d 234, 237, 238 [223 P.2d 17].)

As pointed out by respondent, "The testimony of Thomas Phillips indicating that he had informed on one Mr. Bryan Lord to the narcotics squad, coupled with the fact that Phillips had seen appellant Gelder with Mr. Lord, provides a motive for the concerted action of appellant Gelder, along with Clyde Wooten and the others.

"These crucial facts are just a small part of a whole record which discloses a picture of five boys irritated with the knowl-

edge that Thomas Phillips had been informing on any or all of them. The record discloses these five boys driving to a spot where one of them, Gary Masters, had spotted Phillips, and at that spot leaving the car and proceeding to accost Phillips and 'square' matters.'' The evidence is sufficient to establish a combination of two or more persons to accomplish by concerted action a criminal or unlawful purpose accompanied by overt acts in furtherance of the object of the corrupt agreement, thereby establishing a conspiracy within the contemplation of law.

Appellant directs our attention to the remarks of the trial judge on the hearing of appellant's motion for a new trial, as follows: ''There is no evidence that Gelder (appellant) ever put his hand on this boy at all . . . Gelder didn't actively participate.'' However, there was testimony which placed appellant behind the victim with his hand around the latter's neck.

■ Appellant's contention that the court arbitrarily ignored testimony for the defense because there is no substantial conflict between the People's witnesses and those for the defendant is untenable. The testimony of the complaining witness and that of Mrs. Eyster is in direct conflict with the testimony of appellant himself. Since there are very basic conflicts in the evidence, appellant's argument, asking as it does that we reweigh the evidence is obviously without substance when presented to an appellate tribunal. Such argument, going as it does to the credibility of witnesses and the verity or weight of the evidence, is for the trier of fact (*People v. Osslo, supra*, p. 92).

Finally, appellant asserts that the trial court committed prejudicial error in admitting irrelevant, immaterial and hearsay evidence over objections thereto.

■ With regard to the line of questioning objected to by appellant as irrelevant and immaterial, the record reflects the following, which occurred during the direct examination of Thomas Phillips, the complaining witness:

''Q. Prior to your seeing these persons had you assisted the Narcotics Squad——

''Mr. GRILLO (attorney for appellant): If your Honor please, I object to the question on the ground it is irrelevant and immaterial and not binding upon these defendants.

''THE COURT: I don't know whether it is.

''Mr. GRILLO: It calls for a conclusion.

"THE COURT: I don't know. Objection overruled without prejudice, with permission to strike it if it is not material.

"Q. By MR. LENOIR (Deputy District Attorney): Had you acted as an informant for the Narcotic Squad of the Sheriff's Office? A. Yes.

"Q. Was that in connection with a Mr. Howard Chambliss and a Mr. Bryan Lord? A. Yes.

"Q. Were those parties arrested? A. Yes."

Subsequently, on cross-examination of the witness Phillips, he was asked:

"Q. By MR. GRILLO: Now will you answer the question, Mr. Phillips? Did you ever see Walter Gelder in the presence of either Chambliss or Lord at any time in your lifetime? A. I have seen him around Lord; I have never seen him with Chambliss."

The rule governing inquiry into a collateral fact is stated in *People* v. *Billings,* 34 Cal.App. 549, 552, 553 [168 P. 396], as follows: "The relevancy of proffered proof in a criminal case depends upon whether or not it tends to sustain a legitimate hypothesis of the guilt of the defendant and, generally speaking, an incidental fact is relative to the main fact in issue when, in accord with the ordinary course of events and common experience, the existence of the incidental fact, standing alone or when considered in connection with other established facts, tends in some degree to make the main fact in issue certain. It is not necessary that such incidental fact should bear directly upon the main fact in issue, for it will suffice as a pertinent piece of proof if it can be said to constitute a link, however small, in the chain of evidence, and tends thereby to establish the existence of the main fact in issue. (Citing authority.) . . ." (See also *People* v. *Kristy,* 111 Cal. App.2d 695, 709 [245 P.2d 547].)

The prosecution had a right to show the motive, if any, which activated appellant in joining the group which assaulted Mr. Phillips. Hence any fact is relevant evidence which naturally tends to establish a motive on the part of appellant to retaliate against the complaining witnesses for acting as an informant against either Howard Chambliss or Bryan Lord. Testimony that appellant was friendly with Lord and was seen "around" with him might well be a link tending toward the establishment of a motive for appellant's alleged conduct and actions.

A similar contention was presented by the appellant and

rejected by the court in *People* v. *O'Brand,* 92 Cal.App.2d 752, 754 [207 P.2d 1083], wherein the court said:

"Having been convicted of attempted burglary in the second degree defendants have assigned five errors as grounds for reversal of the judgment.

"They contend that their cause was prejudiced by the court's allowing 'evidence of narcotics to be introduced.' The fact that such proof might have been prejudicial is not a ground for exclusion. . . ."

On this point the court said further, at page 754: ". . . While the general rule forbids the admission of evidence of other crimes and degrading practices unrelated to any issue on trial, it is the settled law that where such proof is relevant to an issue in the case on trial, it is admissible notwithstanding it tends to show immoral conduct or other crimes. The law will not permit justice to be defeated by rejecting evidence simply because it involves other crimes or gross immorality. (Cases cited.) Proof of motive will not be excluded merely because it may be prejudicial to the accused if it is relevant and material. (Cases cited.)"

And, again in *People* v. *Weatherford,* 78 Cal.App.2d 669, 687 [178 P.2d 816], we find the following: "Evidence of motive adds warp to the pattern of guilt woven of circumstance. Whatever fact tends legitimately to show motive is proper proof of an assumed motive for the crime (*People* v. *Soeder,* 150 Cal. 12, 15 [87 P. 1016])." (See also *People* v. *Hall,* 27 Cal.App.2d 440, 444 [81 P.2d 248]; *People* v. *Richards,* 74 Cal.App.2d 279, 287-289 [168 P.2d 435].)

Next appellant insists that prejudicial error "was also committed in the admission of hearsay evidence over timely objections, to wit: the substance of a telephone conversation between People's witness Phillips and an unknown person whose voice was not recognized by Phillips, and who allegedly said if Phillips reported it to the police he would get killed next time." The objection made to the introduction of this evidence was grounded on the claim that, "it was purely hearsay, not binding upon appellant, and irrelevant to the issue of defendants' guilt. In addition thereto, by inference, Phillips testified that it occurred on October 9th, 2 months after the incident."

An examination of the record discloses that the complaining witness Phillips testified that about a half hour after the assault he received a telephone call, and that he did not recognize the voice. The witness then testified that the party

who telephoned him said, "that if I reported it to the police, I would get killed next time." The witness testified further that just preceding the preliminary examination of appellant he had a conversation with the latter wherein "he (appellant) wanted me to drop charges." That he (Phillips) mentioned the telephone call to appellant and "I asked him who made the call and he said they went to Mataisz's house after that. . . ." In answer to the question, "He did not tell you that he was present when that telephone call was made, did he?" the witness answered, "Well, he said he was over there . . . at Mataisz's place." When asked if appellant told him who made the telephone call, Mr. Phillips replied, "That Masters did." Masters was the one who drove the automobile which conveyed the participants in the assault to the scene thereof. Manifestly, appellant's statement to the victim just prior to the preliminary examination showing as it did, that appellant knew of Masters' call to the complaining witness and its content, is a statement against the former's interest (*People* v. *Lindsey*, 90 Cal.App.2d 558, 565 [203 P.2d 572]; Code Civ. Proc., § 1870, subd. 2). There was therefore no error in the ruling of the court.

For the foregoing reasons the judgment granting probation (Pen. Code, § 1237, subd. 1) and the order denying the motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.