[Crim. No. 363. Fifth Dist. Dec. 19, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. SAMUEL L. BRYSON et al., Defendants and Appellants.

James E. Linneman, under appointment by the Court of

Appeal, William O. Minor, R. M. Eliceche and Linneman, Burgess, Telles & Van Atta for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendants, Samuel L. Bryson and Jesse Jackson, were both convicted of burglary. There is no question but that the residence of Charles W. Hasenkamp, on the outskirts of Merced, was burglarized or that a radio and television were feloniously removed from his house by someone or that these articles were found by peace officers in the pickup truck of Bryson which, with him present, had been driven, off and on, for hours by Jackson. Initially, there was a question, however, whether either of the defendants was guilty of the crime. The jury found that both were guilty.

Some of the essential facts are clear and uncontradicted. Mr. and Mrs. Hasenkamp left their home without locking the back door at about 7 o'clock in the evening to visit her mother, who lived nearby; they returned some three hours later; they found that their television set and a clock-radio were missing. A second electric clock had been unplugged from the wall and showed approximately 9:45. On their washing machine was a strange sweater which had not been there before. It was later shown that the sweater belonged to Jackson.

Two deputies belonging to the Merced County sheriff's office answered a telephone call made by the Hasenkamps at about 10 p.m. Before they reached the Hasenkamp house, they met defendant Jack Jackson at a point about a mile from a pickup truck, which was stalled in a ditch about a quarter of a mile from the Hasenkamps' house. Jackson said he was going for help, and he asked the deputies to aid him in getting the truck out of the ditch; the deputies continued on and arrived at the position where the truck was located; a highway patrol car was already at the spot; defendant Bryson was asleep on the front seat of the pickup; the Hasenkamp television set and clock-radio were in the bed of the pickup partially covered by a blanket. The deputies then returned to where they had met Jackson, saw him knocking at the door of a house, and arrested him. Defendant Bryson, sprawled asleep on the seat of the pickup, was awakened only with considerable difficulty after having had one of his legs shaken

for approximately five minutes by the officers. It was clear from all of the testimony of a number of unprejudiced witnesses that Bryson was incoherent and completely under the influence of alcohol, to the point of being incapacitated; he did not testify at the trial. Defendant Jackson, on the other hand, testified at length there and told a long, involved, evasive story; he said that he had been hitchhiking that day from Fresno to Merced, when defendant Bryson, a stranger, gave him a ride in his 1957 International pickup, and asked him to drive, because he had been drinking. The two men were stopped at one time on the highway by an officer and defendant Jackson was given a citation, because he was driving without a license; an open container of wine was found in the car and removed by the highway patrol officer. Bryson and Jackson arrived in Merced at about 7 o'clock in the evening, and Jackson drove to the home of a friend of his, one Cora Perkins. Bryson sat in the truck while Jackson visited; Jackson then went to the home of Cora Perkins' mother; again, Bryson sat in the truck; Jackson drove to a liquor store in Merced and bought a quart of wine; again, Bryson stayed in the car; Jackson then returned to the home of Cora Perkins' mother, where he went inside without Bryson; then Jackson drove to the establishment of a Bob Graham; Jackson went inside to shoot craps; Bryson stayed outside; they consumed wine throughout the evening. At about 9:30 p.m., Jackson drove back to the liquor store; he sat in the car of a friend where he visited briefly while Bryson remained in his pickup drinking. Jackson testified that, after leaving the liquor store, he started on a return trip to the Graham establishment, but became lost on the way; he attempted to turn around, but the pickup stalled, and he could not get the engine started. Defendant Bryson was sitting in the truck during these maneuvers. Jackson testified that he then left the pickup to find help, and that, as he walked away, defendant Bryson got out of the cab to relieve himself. Jackson stated that he left his sweater in the front seat of the pickup; at the time of his arrest he was wearing a coat belonging to Bryson, which he said he had put on without asking permission to wear it. Defendant Jackson denied that he had entered any house in the vicinity.

In some major instances, both of the defendants appeal on the same points. One of the contentions most strongly argued is that the trial court was guilty of serious error in the circumstances of this case by giving as an instruction, a well-known rule concerning aiding and abetting, as fol-

lows: "All persons concerned in the commission of a crime, who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof." And "A person aids and abets the commission of a crime, if he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, or by act and advice, the commission of such crime."

Both defendants argue that there was an entire absence of any evidence that either defendant aided, abetted or advised the other with respect to the commission of the offense for which they were tried.

Jackson bases his argument in this respect upon *People* v. *Moore,* 43 Cal.2d 517 [275 P.2d 485], saying that when there is no dispute in the testimony but inferences from the evidence are conflicting, erroneous or unsupported instructions may constitute reversible error, and also that some instructions may be prejudicial because they are "prosecution-slanted"; though testimony may be without conflict, inferences can be diametrically opposed. (See also Witkin, Cal. Criminal Procedure (1963) Reversible Error, § 755, pp. 728, 729.)

To be guilty as an abetter a defendant must help or advise the one who physically commits the crime and must share his criminal intent. (See *People* v. *Wooten,* 162 Cal. App.2d 804 [328 P.2d 1040] and *People* v. *Pearl,* 211 Cal. App.2d 783 [27 Cal.Rptr. 664].) The defendants urge that there was no evidence in the record of any aiding and abetting; that defendant Bryson was in the pickup asleep and under the influence of alcohol; that Jackson was found approximately a mile away from the pickup; that while his sweater was found in the Hasenkamps' residence, that evidence led only to an inference that the crime was committed by someone acting alone, and that, consequently, the instructions as given constituted error that was prejudicial. Reference is made to an affidavit of one of the jurors, which appears in the clerk's transcript as having been used without objection on motion for a new trial, saying that there was no agreement among the jurors as to guilt except that when a poll was taken as to both defendants jointly the guilty verdict was reached, and that the jurors found both defendants guilty without deciding who had entered the house and with no evi-

dence before them that either defendant had aided and abetted the other.

The reporter's transcript shows that there was an objection made to any instruction on aiding and abetting; counsel for Bryson states on page 133 of the reporter's transcript: "Yes, there was an objection made to the general instruction as with regard to aiding and abetting. The objection was since the general instruction of aiding and abetting was given, there was a discussion as to whether the definition was of aiding and abetting . . . but we did argue that the general instruction of aiding and abetting should not be given."

The Attorney General justifies the giving of the instruction by saying that Jackson testified that he had driven the truck just before the police discovered it; that his sweater was found at the scene of the burglary; that he and Bryson had been together since about 3 o'clock in the afternoon and they were both in the truck when it broke down; that because both defendants were found in the area within a half hour of the time of the crime, the jury could have determined that one of the appellants aided and abetted the other, and thus both were principals in the crime committed. The test as to whether one is an aider or abetter is whether he "instigated or advised the commission of the crime" or was "present for the purpose of assisting in its commission." (See *People* v. *Villa*, 156 Cal.App.2d 128, 133-134 [138 P.2d 828].) We conclude that it constituted error to give the instructions on aiding and abetting because of the total lack of supporting evidence. The question remains whether such error was prejudicial as to either or both defendants.

The evidence indicates that only one of the defendants, Jackson, was able even to walk or talk coherently at the time of the arrest a few minutes after the burglary occurred. From the time he picked up Jackson in the afternoon, Bryson was under the influence of alcohol, and he himself then showed his realization of this fact by asking Jackson, a stranger, to drive his truck. He continued drinking for hours and when he was discovered, approximately 15 minutes after the burglary, he was sound asleep and the police officers were able to awaken him only with the greatest difficulty. It seems a legitimate inference that, at the time of the burglary, he could not have walked from the truck into the house and removed the articles that were stolen. Similarly, it would be nothing but the sheerest guess to conclude that Bryson might have advised or encouraged Jackson to do the stealing. It took approximately

five minutes for the peace officers to awaken Bryson as he was sprawled on the seat of the pickup truck. To assume that he plotted with Jackson to execute the robbery is nonsensical in view of the facts of life. There is no sound indication in the record that would lead one to believe this drunken man could plan a burglary or maneuver sufficiently to enter the house and steal the television and clock-radio sets.

Mr. Hasenkamp testified that the man was lying in the pickup, "asleep," in a "very deep sleep." There is no indication in the record except for Jackson's testimony that he got out of the car to relieve himself that this man could talk coherently or even walk. As to the defendant Bryson, the error is, in our opinion, prejudicial. ▉▉ As to the defendant Jackson, however, it does not seem that the erroneous instructions are prejudicial, because the evidence shows that he was guilty as a principal. Jackson's sweater was in the house; he was on his feet and walking when the deputies found him; he was able to talk coherently; the articles were in the pickup driven by him; he was the one who had been driving the automobile since 3 o'clock in the afternoon; he had made the decisions all evening about where to go and what to do while Bryson was inactive and in effect only a passenger in his own car. While Jackson did do some drinking after the time he was picked up on the highway by Bryson, it seems clear that his imbibing did not approach, either as to quantity or effect, the drinking done by Bryson.

▉▉ Jackson argues that the district attorney was guilty of incurable misconduct by asking him whether he had been previously convicted of burglary in Kern County. In the cross-examination of the defendant, the prosecutor asked: "Now, Mr. Jackson, have you ever been convicted of a felony?" Jackson answered: "No, sir, not to my knowledge."

The prosecutor questioned: "Were you convicted of burglary in Bakersfield?" to which Jackson's counsel objected, saying: "I want a showing outside of the presence of the jury of any information along this line. . . ." At that point, the court asked the jury to retire; the deputy district attorney then stated that he had information that Jackson had been convicted of burglary in Bakersfield in 1960. Jackson, on the witness stand, told the court that he had served 10 months in the Kern County jail but that he had not received probation; he indicated, therefore, that it was a misdemeanor sentence which he had served, rather than a felony. The trial judge then turned to the prosecutor and asked him if he had

information as to what sentence Jackson received for the former crime, and the prosecutor had to answer that he did not, saying: "It is indicated here, or there appears to be ten months, but whether any probation was granted or not, I don't know, but my information was that it was a felony sentence." The court said, "Well, what information do you have that makes you believe that it is a felony sentence?" And the prosecutor answered that there was probation granted. Then, the court said, "What indicates to you there was probation granted?" The prosecutor answered: "A call to the Bakersfield District Attorney's office, your Honor." The court asked: "And did they indicate to you that there was a probationary period?" The prosecutor answered: "There was a probationary period." The court said: "Did you obtain any certified records indicating that?" The deputy district attorney answered: "No, I do not have that, your Honor." And the judge said: "So, you don't have anything except somebody's oral statement." The answer was: "That's correct. Yes." The court asked: "When did you call?" The deputy replied: ". . . whatever date was previously set for this trial, which was Friday, I believe." The trial judge then asked the prosecutor if he had asked the Kern County District Attorney that any record be sent to him, to which the prosecutor said that he had not. He said: "I offer no explanation for it. I should have, no question about that." And the court then said: "Well, as you have indicated yourself, faced with a statement made by Mr. Jackson, he says it was a ten-month period without probation and you can't argue about the fact that that is a misdemeanor sentence, so you don't have a felony." The prosecutor conceded the point.

Obviously, the district attorney's office had not been sufficiently prepared, and when the deputy could not bring proof that the previous conviction was a felony, after the denial by the defendant, it would have been error to persist with the questioning as to burglary. Of course, the rule of impeachment for conviction of a felony is limited to felony convictions. (See Evid. Code, § 788; Witkin, Cal.Evidence (2d ed 1966) § 1243, pp. 1145-1146; § 1244, p. 1147; 54 Cal.Jur.2d, Witnesses, § 153, pp. 562-564.) In the opinion in *People* v. *Perez*, 58 Cal.2d 229, 239 [23 Cal.Rptr. 569, 373 P.2d 617, 3 A.L.R.3d 946], the court states that the cross-examiner in circumstances such as these should be prepared to show by *documentary evidence* that the witness was convicted of a

felony if the witness has denied such a conviction. Defendant Jackson points out that the question was: has Jackson been "convicted of burglary," which was the very crime with which he was being charged.

The appellant points out that in Witkin, California Criminal Procedure (1963) Reversible Error, section 752, page 725, the argument which he advances is applicable to the situation: "It has been seen that some errors are so serious that they are not waived by failure to object. (See *supra*, § 750.) They may also be so serious that, even if objection is made and the trial judge takes corrective action, the harm to the defendant cannot be overcome. The attempted cure may fail either because the error was curable but the cure was inadequate, or because the error was incurable; in either case the judgment will be reversed." However, when the jury returned to the courtroom, the judge stated: "Ladies and Gentlemen, it sometimes happens that counsel intimates by some question that he asks that something is true. Please don't take that as meaning that it is. Until he proves what he has said, the statement that he intimates in his question is nothing. It isn't evidence, nothing that these counsel say is evidence. The statements that are evidence are the statements that are made by the witness himself, and you must listen to the question to know what it is that is the evidence, and in this case he was asked, 'Isn't it true that you were convicted of a felony?' and he says, 'No,' and so the evidence before you at this time is that he has not been convicted of a felony."

It is not claimed that the questions were asked by the deputy district attorney in bad faith. Apparently, he had the information in somewhat unusable form that led him to believe that Jackson had been convicted of a felony in Kern County and that the time spent by him in jail was one of the conditions to probation. It is true that the district attorney's office should have been better prepared by having readily available documentary evidence of the fact. However, the good faith of the prosecuting officer is assured. (See *People* v. *Soto,* 232 Cal.App.2d 437 [42 Cal.Rptr. 799].)

In any event, it seems clear to us that the instruction given by the court to the jury was more than fair to the defendant, and that as the jury is presumed to have followed the instruction and eliminated any thought of a prior felony conviction, there is nothing about the incident that would justify a reversal of Jackson's conviction.

It is true, as Jackson contends, that the evidence

does not show that anyone saw him inside the burglarized house; it is also true that mere presence at or near the scene of a crime is not alone sufficient to justify conviction (*People* v. *Foster,* 115 Cal.App.2d 866 [253 P.2d 50]), and that possession of recently stolen property is not in itself enough to warrant a finding of burglary (*People* v. *McFarland,* 58 Cal. 2d 748 [26 Cal.Rptr. 473, 376 P.2d 449]). He maintains that even though his sweater was found in the Hasenkamp house, as he himself testified, he was wearing Bryson's jacket at the time of his arrest and he said that he had left his sweater in the front seat of the pickup; he contends that his activity in asking help from the deputies to get the truck on the road is hardly the type of action which a defendant would have taken had he known that a stolen television set and radio were in the pickup; he argues that his conviction should be reversed for insufficiency of the evidence and that errors should be carefully considered to determine if they were prejudicial.

In considering the sufficiency of the evidence to justify a conviction, an appellate court is required to assume in favor of the verdict that every fact that the jury could reasonably have deduced from the evidence must be taken to be true. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].)

We are not required to determine in this court whether there has been proof of guilt beyond a reasonable doubt (*People* v. *Hillery,* 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]), but only whether the circumstances in the evidence reasonably justify the verdict (*People* v. *Newland, supra,* and *People* v. *Hillery, supra*). It appears to us that there is ample proof to justify the conviction of appellant Jackson. By his own testimony, he was halted within a quarter of a mile of the scene of the burglary; he had been driving the pickup truck in which the stolen goods were found for about a half day; he drove the pickup into a position where he could not start it within approximately 15 minutes after the burglary; at the scene of the burglary, his sweater was found in the house where the crime occurred. The possession of stolen property by a defendant shortly after a burglary raises an inference of guilt if the possession is a conscious possession and accompanied by dubious conduct. (See *Rollins* v. *Superior Court,* 223 Cal.App.2d 219, 222 [35 Cal.Rptr. 734].) With respect to Bryson, because of his drunkenness, there was no evidence showing a conscious possession by him of the stolen clock-radio and television, but that observation does not apply to Jackson and the jury was entitled to draw the conclusion that

he had conscious and felonious possession of the stolen articles which were in the back of the truck driven by him. (See *People* v. *McFarland, supra,* 58 Cal.2d 748, 755; *People* v. *Foster, supra,* 115 Cal.App.2d 866; and *People* v. *DeLeon,* 236 Cal.App.2d 530, 533 [46 Cal.Rptr. 241].) Shortly after the ditching of the car he was driving, he was found within a mile of it, having been in possession of sufficient bodily vigor and control to walk that distance and attempt to get help. All of the factors taken together in our opinion clearly establish the responsibility for the crime of the defendant Jackson.

It is also urged that one of the two defendants should have had counsel unaffiliated with the public defender's office. In Witkin, California Criminal Procedure (1963) Trial, section 371, page 363, it is stated as a general rule that the constitutional right to counsel includes representation by attorneys ''with no conflicting duties or responsibilities'' and that ''where several defendants are tried together each is entitled on demand to separate counsel, and one cannot be forced, over objection, to accept representation by counsel for a codefendant. [Citing authorities.]''

Defendant Jackson argues that, though each defendant was represented by a single member of the public defender's office, the fact that the attorneys were technically from the same office resulted in an improper conflict. However, neither of the defendants requested separate counsel, and unless at the trial a defendant does object to his representation by the attorney appointed to defend him, he cannot legitimately claim error on that ground for the first time on appeal. (See *People* v. *Byrd,* 228 Cal.App.2d 646 [39 Cal.Rptr. 644].) It is permissible for even a single attorney to represent more than one defendant if the defendants make no objection. (*People* v. *Winkelspecht,* 237 Cal.App.2d 227 [46 Cal.Rptr. 697].)

The defendant Jackson was represented during the trial by the public defender and Bryson by William O. Minor, who was technically a deputy public defender, but who actually occupied a separate office and was a member of a separate law firm. During the oral argument of the appeal, Mr. Minor stated: ''I would be glad to answer any questions which the court might have concerning Mr. Ellery's office and my office. We are not connected in any way, shape or form. I am not an employee of the county; I am a separate contracting party with the county. The term deputy public defender is merely one of convenience. Mr. Ellery is an employee of the county

and is the public defender, but we are not connected in any way.''

Needless to say, we are not here concerned with any situation other than that disclosed by the facts in the instant case when we say that there was no prejudicial error which would warrant a reversal because of the representation of the two defendants.

The judgment against Bryson is reversed; the judgment against Jackson is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied January 16, 1968, and the petition of appellant Jackson for a hearing by the Supreme Court was denied February 14, 1968.