Filed 9/28/16  P. v. Martin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B264129 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA416427) |
| v. | |
| DARRIN SAN MARTIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Kennedy, Judge.  Affirmed.

Jennifer Zide, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Darrin San Martin (defendant) appeals from a judgment entered after his conviction by jury of one count of burglary in violation of Penal Code section 459.[1] We affirm the judgment.

## CONTENTIONS

Defendant argues that the trial court erred in allowing evidence of a prior conviction for burglary be used for impeachment purposes, and by denying his motion for dismissal based on insufficiency of the evidence.

## FACTUAL BACKGROUND

At approximately 2:00 a.m. on September 18, 2013, officers responded to an alarm which had been triggered at Acme Display and Fixtures Company (Acme), located at 1043, 1055 and 1057 South Olive Street in Los Angeles. Acme occupies the three interconnected buildings at those addresses. Mitchell Blumenfeld, the vice president of Acme, was told by the alarm company and the Los Angeles Police Department that a burglar alarm had sounded at the business. He arrived at the scene between 3:00 and 3:30 a.m.

Extensive damage had been done to the property, including a hole in the ceiling and the roof. The breach to the roof was in the middle building, at 1055 South Olive Street. The roof had been pried open. Wigs and mannequins were missing from the showroom, where there was additional damage, including broken glass, debris from the ceiling, and broken mannequins. A pry bar was holding the hole in the roof open. Some of the damaged mannequins were found on the roof.

Acme's interior security camera was not aimed either at the location of the damage or entry point. The exterior camera was in the alley behind the business, pointing north along the west side of the business. The video from that camera showed a person in the alley at 2:30 to 3:00 a.m.

K-9 officer Nhut Huynh and his dog responded to the scene, along with another K-9 officer, Cliff Chu. Officers set up a containment around the area, with over one

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

dozen officers present. No one escaped the containment perimeter after it was established. Officer Chu used his dog to search the interior of the building after having announced their presence and having issued a command to surrender. There was no response.

A police car in the alley behind the business and a police car in front of the building on Olive Street also made "call out" demands over their amplified loud speakers for any suspects to come out.

Officer Huynh made his way through a hole in the ceiling which led to the attic space. Inside the attic space there was a duffel bag with tools and mannequin parts. Another hole led to the roof. Officers Huynh and Schwab went through the hole onto the roof. Officer Huynh's uniform was covered in dust and debris from the damaged ceiling. Scanning the roof area, Officer Huynh saw an individual lying under a raised air conditioning unit. The suspect was sweaty and had dust, similar to the dust that Officer Huynh and Officer Schwab had all over them, on his clothing.

Officer Schwab commanded the person to step out. He had to yell several times before the individual responded. Officer Huynh got a good look at the man, whom he identified as the defendant. There was no one else on the roof.

The security camera video of the alley showed a man in dark clothes in the alley. Defendant was wearing dark grey sweat pants and a dark shirt or sweatshirt. The sweatshirt worn by defendant when he was arrested had red letters on it. Officer Gabriel Lobato testified that he did not recall seeing red letters on the shirt of the person he observed in the security camera video.

It is not standard police procedure to search for fingerprints on every piece of evidence collected. No fingerprint or DNA evidence was recovered here.

Defendant and his wife, Ishega San Martin (Mrs. San Martin), testified for the defense that they were working at their store in Inglewood on the evening of September 17, 2013. Defendant had been doing some drywall work in the shop. They left the shop around 11:00 p.m. and drove home to collect defendant's daughter's bag and drive her home to Riverside. Along the way the couple got into an argument. Defendant pulled

3

the car over in downtown Los Angeles and got out in order to cool off. Defendant's wife testified that this is what defendant often does when they get into an argument. She could not recall the subject of their argument.

Defendant's wife moved into the driver's seat and then drove defendant's daughter to her home. It took a half hour or longer to get to Riverside from downtown Los Angeles. Mrs. San Martin made no attempt to contact defendant before learning of his arrest.

Defendant testified that after he got out of the car, he was robbed at knifepoint by two individuals who took his wallet, watch, cell phone, and shoes. As it was between 12:15 and 12:30 a.m., and no businesses were open or available for help, he decided to seek refuge on a nearby building on Olive Street. Defendant climbed up a pipe so he could "hunker down" for the night without harm coming to him. The pipe was at the corner of the building adjacent to the parking lot. Five feet from that corner of the building was a raised air conditioning unit. Defendant fell asleep under the air conditioning unit. He was there when the officers found him.

Defendant was awakened by two police officers yelling at him and shining their lights on him. One officer shot defendant with a taser, but he was not shocked because only one electrode hit him. Defendant was then dragged out from under the air conditioner to somewhere on the roof where he was handcuffed and taken down a ladder. Prior to being awakened by the officers, defendant heard nothing. There was an active construction site nearby, and although defendant heard the construction noise, he made no attempt to contact the workers at that site for help.

Defendant did not tell the police officers who woke him that he had been robbed and was seeking refuge on the roof. He made no comment to the police.

Defendant admitted his 2000 burglary conviction. He had pleaded guilty to the charge. Defendant explained he had no problem saying he did something and "fessing up to the consequences."

## PROCEDURAL HISTORY

Defendant was charged with burglary in violation of section 459.

4

Defendant was found guilty as charged following a jury trial, and was thereafter sentenced to two years in county jail, with one year of the sentence suspended and the second year to be formal probation.

On May 6, 2015, defendant appealed the judgment.

## DISCUSSION

### I. Prior burglary conviction

Defendant contends that the trial court erred in allowing the use of a prior burglary conviction for the purpose of impeachment. Defendant had seven prior felony convictions for similar crimes. The prosecution sought to use all eight convictions. The court excluded the seven oldest convictions as being too remote, however, the court allowed a 2000 burglary conviction for which defendant received a five-year prison sentence. The court declined to "sanitize" the prior conviction as referring to it simply as a felony conviction, stating, "We don't have to go into the details of it. It is a burglary." During defendant's direct testimony at trial he admitted his prior conviction for burglary.

#### A. Applicable law and standard of review

A trial court's decision admitting or excluding evidence is reviewed for abuse of discretion. Under this standard, the ruling will not be disturbed "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice [citation]." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.) Prejudicial error must be affirmatively demonstrated and will not be presumed. (*People v. Watson* (1956) 46 Cal.2d 818, 836.)

In exercising its discretion to admit a prior conviction for impeachment purposes, the trial court may consider: (1) the extent to which the prior conviction reflects adversely on an individual's honesty or veracity; (2) the nearness or remoteness in time of the prior conviction; (3) the similarity of the prior conviction to the charged offense; and (4) the likelihood the defendant will not testify out of fear of being prejudiced because of impeachment by the prior conviction. (See *People v. Mendoza* (2000) 78 Cal.App.4th 918, 925.)

5

Admission of a prior conviction is subject to the balancing test found in Evidence Code section 352. (*People v. Clark* (2011) 52 Cal.4th 856, 931, citing *People v. Wheeler* (1992) 4 Cal.4th 284, 296.) Under Evidence Code section 352, the court must consider whether the evidence might involve undue time, confusion, or prejudice which outweighs its probative value. (*Wheeler*, at pp. 296-297.)

### B. No abuse of discretion occurred

At trial, the prosecutor argued that all eight similar prior convictions should be admitted, as they showed a pattern of behavior reflecting on defendant's honesty and veracity. The trial court excluded seven of the eight felonies as being too remote. However, the court balanced the high number of offenses and sustained showing of dishonesty with an apparent gap in time and possible prejudice, by allowing only the most recent offense to be presented. In addition, the court allowed only the fact of the prior admission and the name of the crime to be admitted. No factual similarities between the prior crime and the current crime were revealed. The court's decision was well within its discretion.

In order to guard against the jury's improper use of the evidence of the prior conviction, the trial court instructed the jury that if it found a witness had been convicted of a felony, it:

> "may consider that fact only in evaluating the credibility of the witness'[s] testimony. The fact of a conviction does not necessarily destroy or impair a witness'[s] credibility. It is up to you to decide the weight of that fact and whether that fact makes the witness less believable."

We must presume that the jury followed the trial court's instructions. (*People v. Fuiava* (2012) 53 Cal.4th 622, 669.)

Defendant argues that the trial court improperly balanced the relevant factors. Defendant asserts that a proper balancing of the factors necessary to protect a defendant's right to a fair trial was reflected in the outcome of *People v. Almarez* (1985) 168 Cal.App.3d 262, 268.) In *Almarez*, the trial court admitted two prior convictions in a burglary matter because it did not believe it had the authority to exclude them under

Proposition 8. As a result of that ruling, the defendant did not testify. The Court of Appeal reversed, noting that one of the crimes was identical to the crime charged, and the other was a 13-year-old crime that may have been considered too remote. (*Id.* at p. 268.) Because the defendant did not testify, the error was reversible per se. (*Ibid.*) The case is inapplicable. Here, the trial court properly exercised its discretion, weighing the relevant factors and ruling seven priors inadmissible. Only one prior was determined to be admissible for impeachment purposes.

Defendant also relies on *People v. Burns* (1987) 189 Cal.App.3d 734 (*Burns*). *Burns* is similar to *Almarez* in that there, the trial court refused to exercise its discretion, finding that the California Constitution (art. I, § 28, subd. (f)) required admission of evidence of a 20-year-old prior robbery conviction. (*Burns, supra*, at p. 736.) The Court of Appeal reversed, noting that section 28, subdivision (f), did not abrogate the court's discretion under Evidence Code section 352 to exclude evidence of prior felony convictions when their probative value on credibility is outweighed by the risk of undue prejudice. (*Id.* at p. 737.) The court further held that remoteness in time is a factor that may still be considered by the trial court in exercising its discretion under Evidence Code section 352. (*Ibid.*)

The *Burns* court set forth factors to be considered in determining whether evidence of a prior conviction should be allowed into evidence: (1) the length of time that has elapsed since the conviction; (2) the length of sentence served on the prior conviction; (3) the nature of the conviction; (4) the age of the defendant at the time the prior crime was committed; and (5) the defendant's conduct subsequent to the prior conviction. (*Burns, supra*, 189 Cal.App.3d at pp. 737-739.) The court concluded that a conviction that is 20 years old, such as the one it was considering, "certainly meets any reasonable threshold test of remoteness." Turning to the age factor, the court noted that the defendant was 29 years old at the time of the prior crime, and that it appeared there were no intervening convictions. (*Id.* at pp. 738-739.)

Defendant argues that had the *Burns* factors been considered in our case, they would have weighed in favor of exclusion. Defendant was 50 years old at the time of

7

trial, and his last conviction was in 2000 when defendant was 35. In 2000 he received a five-year prison sentence, and remained free of custody with no further criminal conduct for 10 years. Defendant argues that it could be fairly said that he committed the prior crime in his relative youth and had turned his life around.

We find *Burns* irrelevant for the same reason that *Almarez* is irrelevant. In *Burns*, reversal was warranted because it was a "classic case for the exercise of trial court discretion" and the "question of admissibility cannot be decided at the appellate level." (*Burns, supra*, 189 Cal.App.3d at p. 739.) Here, the trial court has exercised its sound discretion, excluding seven prior felonies on the grounds of remoteness in time and admitting one for the sole purpose of impeachment. Defendant's arguments regarding his age and apparent good conduct for the preceding 10 years were properly considered in the trial court.

Defendant further argues that the trial court erred in failing to "sanitize" the prior conviction by referring to it only as a felony. Defendant relies on *People v. Moultrie* (1979) 99 Cal.App.3d 77, 86, disapproved by *People v. Barrick* (1982) 33 Cal.3d 115, superseded by statute or rule as stated in *People v. Collins* (1986) 42 Cal.3d 378. In *Moultrie*, the defendant appealed his conviction on five counts of robbery on the ground that the trial court erroneously denied his motion to exclude his prior attempted robbery conviction. The trial court had determined that it was appropriate to allow the defendant, should he testify, to be asked whether he had ever been convicted of a felony involving theft. (*Moultrie, supra*, at p. 83.) The specific prior crime of attempted robbery was not mentioned. (*Id.* at p. 86.) The Court of Appeal determined that the trial court carefully weighed the relevant factors and struck a fair balance between the effect of a defendant not testifying out of fear of being prejudiced because of impeachment, and clothing him with a 'false aura of veracity.'" (*Id.* at p. 86.)

The same can be said of the trial court in this matter. The trial court carefully weighed the relevant factors and determined that only the fact of the prior crime and the name of the crime should be admitted in this matter. No abuse of discretion occurred.

**II.  Section 1118.1 motion for dismissal**

Section 1118.1 allows the defense to make a motion to dismiss at the end of the prosecution's case due to insufficiency of the evidence produced.  Here, defendant's counsel made such a motion, which the trial court denied.  Defendant argues that this was error.

*A.  Applicable law and standard of review*

Upon a motion pursuant to section 1118.1, a trial court must dismiss an action "if the evidence before the court is insufficient to sustain a conviction of such offense or offenses on appeal."  (§ 1118.1.)  We review independently a trial court's ruling that the evidence is insufficient to support a conviction.  (*People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.)  In reviewing the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses substantial evidence from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.  (*Id.* at p. 1212.)

There are two core requirements for a finding of guilt under section 459:  (1) that the defendant entered the building where the crime occurred; and (2) that he did so with the intent to commit grand or petit larceny or any felony therein.  (§ 459.)

> "'Although the People must show that a defendant charged with burglary entered the premises with felonious [or larcenous] intent, such intent must usually be inferred from all of the facts and circumstances disclosed by the evidence, rarely being directly provable.  [Citations.]  When the evidence justifies a reasonable inference of felonious [or larcenous] intent, the verdict may not be disturbed on appeal.  [Citations.]'  [Citation.]"

(*People v. Price* (1991) 1 Cal.4th 324, 462.)

"Mere presence at the scene of the crime standing alone is not sufficient to justify a finding of guilt.  [Citation.]"  (*People v. Foster* (1953) 115 Cal.App.2d 866, 868 (*Foster*).)

9

### B. The record supports the trial court's denial of the section 1118.1 motion

Defendant argues that the evidence merely showed his presence at the scene of the crime, citing *Foster*. In *Foster*, that defendant was in a car when police saw a package containing drug paraphernalia and heroin thrown from the right front window. (*Foster, supra*, 115 Cal.App.2d at p. 867.) All three individuals riding in the car denied knowledge of the package and denied seeing either of the others throw it out the window. A jury convicted all three defendants of possession of narcotics. (*Id.* at pp. 868-869.) Two of the defendants appealed, and the Court of Appeal reversed the denial of one of the defendants' motion for new trial, finding that the jury's finding all three guilty suggested that "they did not clearly understand the quantum of proof required to fix guilt upon *any* particular defendant." (*Id.* at p. 869, italics added.)

Here, unlike in *Foster*, the evidence showed far more than simply presence in the vicinity of narcotics. The evidence showed that defendant was found hiding on a roof under an air conditioning unit shortly after the burglar alarm sounded at 2:30 in the morning. Defendant refused to leave his hiding place after police officers repeatedly commanded him to do so. When he did exit, he was sweaty and covered in dust similar to that which Officer Huynh had on his clothing after climbing through the hole in the building's roof. In addition, the jury was not required to believe defendant's explanation as to why he was on the roof at that hour. As the *Foster* court stated, "From this clumsy attempt to manufacture a defense the jury might reasonably infer the guilt[]" sufficient for conviction. (*Foster, supra*, 115 Cal.App.2d at p. 869.)[2]

---

[2] For similar reasons, *People v. Johnson* (1984) 158 Cal.App.3d 850 and *People v. Bryson* (1967) 257 Cal.App.2d 201, are distinguishable. *Johnson* involved a defendant who was present at a residence where drugs were found in a hole in the ceiling. There was no evidence that the defendant lived at the residence where the drugs were found. (*Johnson, supra*, at pp. 853-854.) *Bryson* involved a defendant who was present in a vehicle were stolen goods were found; however, the defendant was drunk and sleeping heavily in the vehicle at the time, and there was no evidence that "would lead one to believe this drunken man could plan a burglary or maneuver sufficiently" to enter a house and steal the items. (*Bryson, supra,* 257 Cal.App.2d at p. 207.) As explained above, in contrast to *Johnson* and *Burns*, the circumstantial evidence in this case constitutes

Defendant cites *People v. Trevino* (1985) 39 Cal.3d 667 (*Trevino*), disapproved on other grounds in *People v. Montiel* (1993) 5 Cal.4th 877, disapproved in *People v. Sanchez* (2016) 63 Cal.4th 665, to illustrate that even where fingerprints are found at a crime scene, those prints may be insufficient proof of guilt. *Trevino* involved a fingerprint found in a home where Trevino had previously been a guest, and there was no evidence as to how or when the print came to be placed in the victim's home. (*Trevino*, at p. 697.) *Trevino* does not support reversal of the defendant's section 1118.1 motion in this matter.**3**

Defendant was found hiding on the roof of a building shortly after the burglar alarm was activated, covered in dust that appeared to be consistent with the material dislodged in the illegal entry. This circumstantial evidence was sufficient to support the trial court's denial of defendant's section 1118.1 motion.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.
CHAVEZ

We concur:

_____, P. J.
BOREN

_____, J.
ASHMANN-GERST

---

substantial evidence from which a reasonable trier of fact could rationally conclude beyond a reasonable doubt that defendant was guilty of the burglary.

**3**     For similar reasons, *Birt v. Superior Court* (1973) 34 Cal.App.3d 934 and *People v. Flores* (1943) 58 Cal.App.2d 764 are distinguishable. Both involved fingerprint evidence. Fingerprints were not in issue here and these cases do not support defendant's position that his section 1118.1 motion was improperly denied.