[Crim. No. 44004. Second Dist., Div. Seven. July 27, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES ERNEST JOHNSON, Defendant and Appellant.

**COUNSEL**

Roger J. Rosen for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Howard Schwab and Jane M. Began, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**THOMPSON, Acting P. J.**—Defendant James Johnson appeals from the judgment of conviction by jury trial of possession of phencyclidine (PCP) for sale (Health & Saf. Code, § 11378.5). Defendant contends the evidence is insufficient to support his conviction. Because we agree there is no substantial evidence of defendant's possession of the contraband, we must reverse the conviction.[1]

*Facts*

The evidence, viewed in the light most favorable to the judgment (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]) showed that on April 16, 1981, at about 9:30 p.m., Los Angeles police officers, under the authority of a search warrant, forced entry into a sparsely furnished four-room residence in a low-income area of the city. The house was located at 1025-1/2 W. 95th Street. The officers found six or seven people "milling around" in the main room of the house. Defendant and a woman were standing in the kitchen. A search of the bathroom disclosed a Listerine bottle containing 60 milliliters of PCP. On top of the dresser in the main room the officers found two boxes containing a total of nine and one-half Sherman cigarettes.[2]

During the search of the kitchen, the officers noticed a small hole in an overhang in the ceiling, six and one-half to seven feet above the floor. In order to see inside, the six-foot officer utilized a cinder block which was lying prone on the floor against the wall "a little bit off centered" from the hole. The officer stood the six-by eighteen-inch block up vertically on its end, adjusted it under the hole, stepped upon the block, and then shined a flashlight into the hole. He then stuck his hand into the hole to the right side and retrieved two bottles which had not been visible from the kitchen floor. The bottles consisted of a clear glass cylindrical bottle, five inches long, containing thirty milliliters (approximately one ounce) of PCP and a one-half pint gin bottle containing eighty milliliters of PCP.

---

[1]In view of our reversal, we need not reach defendant's other contentions.

[2]The cigarettes were not contraband as none of them had been dipped in PCP.

A latent print lifted from the glass bottle containing 30 milliliters of PCP matched defendant's left thumb. Other prints on the bottle were not clear enough to be identifiable. These prints were superimposed on top of one another. The fingerprint expert, Appleby, concluded that since there were no prints on top of defendant's print, no one could have touched that "same exact spot" on that particular bottle after defendant did. The expert also testified, however, that it was "impossible" to establish how long defendant's fingerprint had been on the surface of the bottle or whether there was anything inside the bottle at the time the print was placed on it.

The police in their search of the house did not find any rent receipts or utility bills in defendant's name or in the name of the other persons found in the house. Defendant was searched but no key to the residence was found on him.[3] There was soiled clothing on the floor in various areas of the house but no evidence that any of the clothes belonged to defendant. The police claimed they could not determine who owned the property. They had not investigated the county records to determine ownership. The police had seen defendant in the front yard of the house three days before the search. They had never seen defendant nor anyone else make a PCP sale from that location, however.

### Discussion

The record does not contain substantial evidence from which a reasonable trier of fact could rationally conclude beyond a reasonable doubt that defendant was guilty of possessing PCP for sale. (See *People* v. *Johnson, supra,* 26 Cal.3d at p. 578.) Evidence to be substantial must be reasonable in nature, credible and of solid value. (*Id.,* at p. 576.) The evidence of possession in the case was not substantial.

The elements of the offense of possession of PCP or other restricted drugs for sale are physical or constructive possession with knowledge of the presence and narcotic character of the drugs (*People* v. *Williams* (1971) 5 Cal.3d 211 [95 Cal.Rptr. 530, 485 P.2d 1146], 215; *People* v. *Jenkins* (1979) 91 Cal.App.3d 579, 583 [154 Cal.Rptr. 309]) for the purpose of sale (see *People* v. *Shipstead* (1971) 19 Cal.App.3d 58, 77 [96 Cal.Rptr. 513]). To establish possession, it must be shown that the accused exercised dominion and control over the contraband. (*People* v. *Hunt* (1971) 4 Cal.3d 231, 236 [93 Cal.Rptr. 197, 481 P.2d 205].)

---

[3]Officer Gilbert testified that defendant was searched and that if they had found a key to his front door on defendant they would have noted it in their report.

Here, there was no evidence defendant physically possessed the substance in question. Nor was there solid credible evidence of his constructive possession. Constructive possession "occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another." (*People* v. *Newman* (1971) 5 Cal.3d 48, 52 [95 Cal.Rptr. 12, 484 P.2d 1356], overruled on other grounds in *People* v. *Daniels* (1975) 14 Cal.3d 857, 862 [122 Cal.Rptr. 872, 537 P.2d 1232].)

Defendant's presence in the kitchen was not enough to show his constructive possession of the PCP in the bottles found in the hole in the ceiling. "[M]ore than mere presence must be shown in order to prove constructive possession. . . ." (*People* v. *Jenkins, supra,* 91 Cal.App.3d 579, 584.)

In *Jenkins,* Justice Kaus writing for Division Five of the Second District Court of Appeal explained: "The inference of dominion and control is easily made when the contraband is discovered in a place over which the defendant has general dominion and control: his residence [citation], his automobile [citation], or his personal effects [citation]. However, when the contraband is located at premises other than those of the defendant, dominion and control may not be inferred solely from the fact of defendant's presence, even where the evidence shows knowledge of the presence of the drug and of its narcotic character." (*Ibid.*)

There was no evidence presented from which to reasonably infer defendant's exclusive or joint dominion and control. Defendant, as only one of nine persons found in the house, cannot be deemed to have exclusive access to the contraband. The bottles containing PCP were not even visible from defendant's vantage point in the kitchen. If the six-foot police officer could not reach or see inside that hole without standing on an eighteen-inch up-ended cinder block, certainly defendant, who was no more than five feet, eight inches tall, could not.

Moreover, the record is strikingly devoid of any solid evidence that defendant owned, rented or in any way occupied the premises. The police admitted they had not even bothered to investigate the county records to find out who owned the house. The officer did testify local PCP dealers concealed possession of a drug house by having a girlfriend go down to open up utilities, using someone else's name. But this testimony does not

give rise to a reasonable inference defendant exercised dominion and control since there was no evidence whatsoever that he rented the house or opened up the utilities, either directly or through anybody else, such as a girlfriend. Nor does the prosecution evidence, that police saw defendant outside the house in the yard three days before, raise an inference defendant owned or lived at the premises. He could just as easily have been a guest. Furthermore, the police never saw defendant make a drug sale from the residence. And there was no evidence defendant had a key to the residence or that any of the clothing found inside was his.

The People rely on the fact that a thumbprint of defendant's was found on the bottle containing 30 milliliters of PCP. But, as was pointed out in *People* v. *Jenkins, supra,* 91 Cal.App.3d at page 584, "there is a limit to the mileage that can be obtained from the fingerprint evidence." The *Jenkins* court held that evidence that a defendant's fingerprint had been found on three containers which were "constituents of a laboratory in which PCP was being manufactured," located in his brother's garage, was insufficient to support either the conviction of manufacturing PCP or of possessing piperidine and cyclohexanone with the intent to manufacture PCP. (*Ibid.*) The court explained "[t]he only fact directly inferable from the presence of the fingerprint[] is that sometime, somewhere defendant touched the container[]." (*Ibid.*)

The People argue *Jenkins* is distinguishable because in that case there was no evidence the contents of the three containers touched by defendant were used in the manufacture of PCP. We are not persuaded, however, that the mere fact that the bottle did contain contraband when the police seized it makes *Jenkins* inapplicable to this case.[4]

The container itself was not contraband. Rather, it was a completely legal item which, as the People's fingerprint expert himself testified, could have been empty or filled with a legitimate substance at the time defendant's print was placed on it. The fact defendant's thumbprint was intact on one part of the bottle did not show he was the last person to touch the bottle. As the fingerprint expert explained, it meant only that no one else had touched that "exact same spot" on the bottle after defendant. Here, as in *Jenkins*, "(1) there was no evidence of the age of the fingerprint[] which [was] lifted from the container . . .; (2) there was no direct evidence where [the container was] when defendant touched [it]; and (3) there was no direct

---

[4]Parenthetically, we note that in several respects the People's case herein was weaker than in *Jenkins*. In that case, there were prints on three containers; moreover, there was also evidence introduced of defendant's falsehoods to the police, including his continued denial of ever touching any of the containers even after being confronted with his prints.

evidence of what was in the container[] when defendant touched [it]. . . ." (91 Cal.App.3d at p. 583.)

In *People* v. *Flores* (1943) 58 Cal.App.2d 764 [137 P.2d 767], the court held the circumstantial evidence of the presence of a defendant's fingerprint on the back of a rear view mirror of a stolen car was insufficient to support a grand theft conviction. It established, at best, only that the defendant was in the car. The court pointed out "there was no evidence, direct or otherwise, to show that [defendant] was at any time in *possession* of the stolen property." (*Id.*, at p. 769; italics added.) The court explained that, even "giving to the finger print testimony all the probative force claimed for it by [the People], still it does not tend to establish any of the essential elements of [the crime] . . . . While the fact that an accused person has an opportunity to commit the crime with which he is charged may be a circumstance from which, in conjunction with other circumstances, guilt may be conjectured or inferred, it is nevertheless an established precept of law that an incriminating circumstance from which guilt may be inferred must not rest on conjecture. And by the same rule it is not permissible to pile conjecture upon conjecture." (*Id.*, at pp. 769-770.)

Indeed, in *Birt* v. *Superior Court* (1973) 34 Cal.App.3d 934 [110 Cal.Rptr. 321], the Court of Appeal held evidence of a defendant's fingerprint on a cigarette lighter in a rental vehicle containing loot from a residential burglary, was insufficient to even bind the defendant over for trial. The vehicle had been abandoned by the burglars when surprised by the victim. The court initially stressed: "It is indisputable that the mere presence of [defendant's] fingerprint on the lighter found in the van would be insufficient to support her *conviction* of the crime charged." (*Id.*, at p. 937.) In holding the presence of the fingerprint on the lighter did not provide probable cause to hold the defendant for trial, the court pointed out: "At most, the presence of [defendant's] fingerprint on the lighter found on the front seat showed that, at some unknown time and place, she had been inside the van; but there was no direct or circumstantial evidence to indicate when and where that had been. Only by guesswork, speculation, or conjecture can it be inferred that petitioner was inside the van, or in the area, at the time of the . . . burglary." (*Id.*, at p. 938.)

Here, at most, defendant's thumbprint on the bottle shows that at some unknown time and place he had handled that particular bottle. Only by conjecture can it be inferred that defendant was ever in possession of the contraband that was inside that bottle when the police seized it. Such speculation is not evidence of solid value and cannot support the conviction. Accordingly, the judgment must be reversed.

## *Disposition*

The judgment of conviction is reversed and the cause is remanded to the superior court to enter an order of dismissal.

Johnson, J., and Pickard, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.