Filed 9/22/14  P. v. Williams CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>STANLEY LOVELL WILLIAMS,<br><br>    Defendant and Appellant. | B248619<br><br>(Los Angeles County<br>Super. Ct. No. MA057949) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bernie C. Laforteza, Judge.  Affirmed.

Alan S. Yockelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Stanley Lovell Williams was convicted by a jury of possession of a firearm by a felon and was sentenced to an aggregate state prison term of four years.[1] On appeal, Williams contends the evidence is insufficient to support his conviction and his counsel rendered ineffective assistance. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

At trial, Los Angeles County Sheriff Deputy Christopher Dimmitt testified he and his partner were on patrol in Lancaster on the evening of July 26, 2012. They initiated a traffic stop of a car they saw leave an apartment complex at 601 East Avenue I. Williams was a passenger in the car. He had no identification in his possession and said his name was Lamar Leshay. Later, Williams told the deputies his true name and date of birth. Using the computer in his patrol car, Dimmitt discovered Williams had an outstanding misdemeanor arrest warrant showing his last known address was in Littlerock, California. Dimmitt searched Williams at some point during the stop and seized a cell phone that Williams said belonged to him. Williams was taken into custody and placed in the backseat of the patrol car. At the scene, Dimmitt and his partner accessed information on the cell phone 45 minutes after Williams's arrest. Among the cell phone's digital contents were photographs, a video and a list of names and phone numbers.

Williams directed the deputies to what he identified as his residence, 601 East Avenue I, Apartment 109, where they contacted Danielle Kyanna Brazil. She consented to a search of the apartment. Inside the apartment were Brazil's and Williams's toddler son and Brazil's elderly father. The apartment had two bedrooms. The deputies elected not to search the bedroom where Brazil's father was lying down. They conducted a

---

[1] In a bifurcated proceeding, the trial court found Williams had suffered two prior serious or violent felony convictions within the meaning of the three strikes law (Pen. Code, §§ 667, subds. (b)-(i); 1170.12, subds. (a)-(d)). The trial court orally pronounced the four-year sentence as consisting of the two-year middle term doubled under the three strikes law. However the minute order and the abstract of judgment mistakenly show the sentence was calculated as double the lower term. If the judgment is reinstated, the abstract of judgment must be corrected and a new minute order issued.

thorough search of the second bedroom and all common areas of the apartment, including the kitchen, living room and bathroom.

The second bedroom contained a bed, two nightstands incorporated into a large headboard, one or two dressers and a closet. Deputy Dimmitt found a .22 caliber long rifle underneath the mattress of the bed. On the nightstand closest to the rifle were a wallet containing Williams's California driver's license, bearing the same Littlerock address as the misdemeanor warrant, a notebook marked, "Stan's book. Do not touch," men's toiletries and men's clothing. On the other nightstand, which was by the closet, were some women's clothing and other belongings. The closet contained only women's clothing.

Deputy Dimmitt examined the rifle and determined it was unloaded, capable of being discharged and had a working firing pin. Dimmitt also examined the cell phone and found names and phone numbers matching those on a page in the recovered notebook. A video from the cell phone showed Williams's face, followed by Brazil naked in the bedroom where the rifle was found. Photographs from the cell phone depicting Williams in this bedroom were admitted into evidence.

When the deputies completed the search of the apartment, Deputy Dimmitt's partner carried the rifle to the trunk of the patrol car. He passed by Williams, who was still in the backseat and appeared to be watching the deputy. Dimmitt advised Williams of his right to remain silent, to the presence of an attorney, and, if indigent, to appointed counsel (*Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602]), which Williams waived. When questioned about the rifle, Williams started to give a statement several times, but then leaned back and said, "You know what, man. It doesn't even matter. You got me."

During the booking process, Deputy Dimmitt completed a booking and property form by recording Williams's responses to various questions. When Dimmitt asked for Williams's address, Williams said it was 601 East Avenue I, Apartment 109 in Lancaster. Dimmit then had Williams review and sign the completed form. The parties stipulated that Williams had a prior felony conviction.

3

Following the People's presentation of evidence, the trial court denied the defense motion to dismiss (Pen. Code, § 1118.1). Williams did not testify or offer other evidence in his defense with the exception of a recent California Department of Motor Vehicles printout listing a Los Angeles address as of July12, 2012 and a Littlerock address prior to that date.

## DISCUSSION

I. *Substantial Evidence Supports the Conviction of Possession of a Firearm by a Felon.*

    A. *Standard of review*

To assess a claim of insufficient evidence in a criminal case, "we review the whole record to determine whether any rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt. [Citation.] The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

    B. *There was sufficient evidence Williams constructively possessed the rifle*

Williams was convicted of possession of a firearm by a felon in violation of Penal Code, section 29800, subdivision (a)(1). As the jury was instructed, to support a guilty verdict, the People had to prove Williams possessed a firearm, knew that he possessed the

firearm and had previously been convicted of a felony. (Pen. Code, § 29800, subd. (a)(1); Cal.Crim No. 2511.) "Possession may be actual or constructive. Actual possession means the object is in the defendant's immediate possession or control. A defendant has actual possession when he himself has the weapon. Constructive possession means the object is not in the defendant's physical possession, but the defendant knowingly exercises control or the right to control the object." (*In re Daniel G.* (2004) 120 Cal.App.4th 824, 831; see also *People v. Pena* (1999) 74 Cal.App.4th 1078, 1083-1084 [An individual has constructive possession "when the weapon, while not in his actual possession, is nonetheless under his dominion and control, either directly or through others."].) Possession can be shown by circumstantial evidence and may be inferred from the defendant's conduct. (*People v. Rushing* (1989) 209 Cal.App.3d 618, 622-623.)

Williams contends the evidence was insufficient to support the finding he constructively possessed the recovered rifle. In particular, Williams asserts, as he did during argument to the jury, the People failed to prove he resided at Brazil's apartment, had any control of the bedroom or any knowledge or control of the rifle. In support of his claims, Williams relies on *People v. Johnson* (1984) 158 Cal.App.3d 850, 852-853 where, in executing a search warrant, police officers encountered the defendant in the kitchen and found phencyclidine (PCP) secreted in the kitchen ceiling while searching the house. This court concluded there was no substantial evidence from which to reasonably infer the defendant exercised exclusive or joint dominion and control over the PCP, noting the defendant was one of nine persons found in the house and the hidden PCP was not visible from the defendant's vantage point in the kitchen. (*Id.* at p. 854.) Additionally, we determined there was no evidence the defendant "owned, rented or in any way occupied the premises." (*Ibid.*) The police admitted they had not investigated who owned the house or the owner's relationship, if any, to the defendant. (*Id.* at pp. 854-855.) Nothing in the record suggested the defendant had a key to the house or any of the clothing found inside belonged to him. (*Id.* at p. 855.)

5

Williams also cites *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, a case involving a "gang gun," which was found under a mattress in a motel room occupied by two defendants and two females. (*Id.* at pp. 1413-1414.) The court reversed one defendant's conviction for possession of a firearm by a felon (and the attendant gang enhancement), concluding there was no substantial evidence the defendant had control of the gun in light of the fact the expert did not testify that any gun possessed by a gang member was a gang gun, that the subject gun was a gang gun or that all gang members always had the right to control a gang gun. (*Id.* at pp. 1417-1420.) Instead, the expert only testified that a gang gun was accessible to gang members at most times. (*Id.* at p. 1417.)

The facts of this case stand in contrast to those in *Johnson* and *Sifuentes*. According to Deputy Dimmitt's uncontroverted testimony, Williams informed the deputies he currently resided at the East Avenue I apartment, which he subsequently confirmed was his address during the booking process. Dimmitt found the rifle in the bedroom Williams shared with Brazil, who was his girlfriend and the mother of their toddler son.[2] The rifle was hidden under the portion of the mattress nearest the nightstand holding Williams's personal items, which implied Williams slept on that side of the bed and the weapon belonged to him. The deputy's testimony as to what he saw, retrieved and heard, and from which the jury reasonably inferred Williams constructively possessed the rifle, was neither physically impossible nor inherently improbable. (See *People v. Mayberry* (1975) 15 Cal.3d 143, 150 [The testimony of one witness is sufficient to constitute substantial evidence, unless it is physically impossible or inherently improbable].)

II. *Appellant Has Not Demonstrated Prejudice With Respect to Fourth Amendment Issues*

At trial, defense counsel successfully argued one photograph and part of the video retrieved from Williams's cell phone were inadmissible under Evidence Code section

---

[2] Williams acknowledged in his opening brief Brazil was his girlfriend and the toddler in the apartment was their son.

352. Counsel did not argue the rest of the video and remaining photographs should be excluded, nor did she move to suppress all the evidence seized, including the digital contents of Williams's cell phone, as the fruit of an unreasonable search in violation of the Fourth Amendment. (Pen. Code, §1538.5). Williams now contends defense counsel's failure to bring a motion to suppress the cell phone evidence deprived him of effective assistance of counsel.

To establish ineffective assistance of counsel under either the federal or state constitutional guarantee, a defendant must show "'""that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant."'"" (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [104 S.Ct. 2052, 80 L.Ed.2d 674].) "'"The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant. The proof . . . must be a demonstrable reality and not a speculative matter."'" (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

In his opening brief, Williams acknowledges if his counsel had filed a suppression motion, it would have been denied pursuant to *People v. Diaz* (2011) 51 Cal.4th 84, 88, 98-99, in which the California Supreme Court concluded a warrantless search of the digital contents of a suspect's cell phone incident to a valid arrest does not violate the Fourth Amendment. Although *Diaz* was the state of the law in California at the time of his offense, Williams nonetheless faults defense counsel for not contesting the search of his cell phone, pointing to the unsettled state of federal law in the absence of a United States Supreme Court decision directly addressing the issue of warrantless cell phone searches. Williams maintained that if the United States Supreme Court were to abrogate *Diaz*, he would be foreclosed from benefitting from that ruling, having forfeited a Fourth Amendment challenge to the cell phone search in this case due to his counsel's ineffective assistance.

During the pendency of this appeal, the United States Supreme Court decided *Riley v. California* (2014) __ U.S. __ [134 S.Ct. 2473, 189 L.Ed.2d 430],[3] in which police officers initiated a traffic stop of the defendant and impounded his car after learning he was driving on a suspended license. (*Riley*, *supra*, 134 S.Ct. at p. 2480) During an inventory search of the car, the officers discovered loaded handguns under the hood and arrested the defendant for unlawfully possessing firearms. (*Ibid.*) At the station, the officers searched the digital contents of a cell phone found in the defendant's pocket, which led to information implicating him in an earlier shooting. (*Id.* at pp. 2480-2481) The defendant was ultimately charged with attempted murder and related felonies. (*Id.* at p. 2481) His pretrial motion to suppress the evidence obtained from his cell phone was denied. (*Ibid.*) On appeal, the Court of Appeal concluded the police search of the digital contents of the cell phone was lawful under *Diaz* and affirmed the judgment. (*Ibid.*) In reversing, the United States Supreme Court unanimously held police officers generally may not, without a warrant, search the digital contents of a cell phone seized from an individual who has been lawfully arrested. (*Riley, supra*, 134 S.Ct. at pp. 2485, 2493)

In response to our request to provide supplemental briefing on the retroactive application of *Riley*, the parties agree the decision applies retroactively to this case. When the United States Supreme Court establishes a new rule for the conduct of criminal prosecutions it generally applies retroactively to those cases that are pending on direct review or not yet final. (*Griffith v. Kentucky* (1987) 479 U.S. 314, 328 [107 S.Ct. 707; 93 L.Ed.2d 649] ["a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past"]; accord, *Davis v. United States* (2011) 564 U.S. __, __ [131 S.Ct. 2419, 2431, 180 L.Ed.2d 285].) As Williams's appeal was pending when *Riley* was announced, that decision applies retroactively here.

---

[3] The Court also decided its companion case, *United States v. Wurie* (2014) __ U.S. __ [134 S.Ct. 2473; 189 L.Ed.2d 430].

We also requested the parties to address what remedies, if any, Williams may obtain if *Riley* were applied retroactively to this case. "Retroactive application does not, however, determine what 'appropriate remedy' (if any) the defendant should obtain." (*Davis, supra*, 131 S.Ct. at p. 2431.) In other words, the retroactive application of a new rule does not necessarily mean a defendant will gain relief, which is an entirely separate issue. (*Ibid.*) "As a result, the retroactive application of a new rule of substantive *Fourth Amendment* law *raises* the question whether a suppression remedy applies; it does not answer that question." (*Ibid.*)

In their supplemental brief, the People argue the so-called good faith exception applies in this case to preclude the suppression of the cell phone evidence because the deputies reasonably relied on *Diaz* in searching Williams's cell phone. (*Davis, supra,* 131 S.Ct. at p. 2431 "[W]hen the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply"].) Williams argues the good faith exception does not apply here. According to Williams, the deputies did not reasonably rely on *Diaz* as binding precedent, both because changes in cell phone technology since that decision allows nearly unlimited storage of personal information, and because the state of the law at the time of the search was unsettled. Williams asserts the "exceedingly broad search" of the digital contents of his cell phone violated his Fourth Amendment rights even under *Diaz* and the evidence should be suppressed.[4]

We need not reach that issue here, as we can find no prejudice to defendant. To prevail on a claim of ineffective assistance of counsel, "a defendant must show both that his counsel's performance was deficient when measured against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to defendant in the sense that it 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'

---

[4]     The People's position finds support in *People v. Macabeo* (Sept. 3, 2014, B248316) 2014 D.A.R. 12245 [because *People v. Diaz* (2011) 51 Cal.4th 84 was binding at the time of the search, good faith exception to exclusionary rule applied.])

9

[Citations.]" (*People v. Andrade* (2000) 79 Cal.App.4th 651, 659-660.) Prejudice is shown when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra,* 466 U.S. at p. 694.) It is not necessary for the court to examine the performance prong of the test before examining whether the defendant suffered prejudice as a result of counsel's alleged deficiencies. (*Id*. at p. 697.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (*Ibid*.)

As discussed above, there was substantial evidence to support the conviction. Defendant directed the officers to the residence, and later confirmed that as his address. He did not dispute at trial, and conceded on appeal, that Brazil was his girlfriend and the child was his son. Thus, the videos found on the cell phone, and admitted into evidence, did not establish new fact, but were cumulative. Similarly, the fact that the contacts found in the search of the phone could be linked to some found in the notebook marked as "Stan's book" was also cumulative. As such, there is not a reasonable probability that the outcome of the proceeding would have been different.

## DISPOSITION

The judgment is affirmed.

ZELON, J.

We concur:

WOODS, Acting P. J.

SEGAL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.