Filed 4/7/26  P. v. Kaka CA5

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SORAN K. KAKA,<br><br>Defendant and Appellant. | F088434<br><br>(Super. Ct. No. CRF72135)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  Kevin M. Seibert, Judge.

Melissa Lipon, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Christopher J. Rench and Jessica A. Eros, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Franson, Acting P. J., Peña, J. and DeSantos, J.

## INTRODUCTION

Defendant Soran K. Kaka was convicted and sentenced on two counts of custodial possession of a weapon and one count of possession of a controlled substance in a custodial facility. On appeal, defendant contends there was insufficient evidence he had possession of the weapons or the controlled substance. The People disagree, contending substantial evidence shows the contraband was under his dominion and control. We agree with the People and affirm the judgment.

## PROCEDURAL SUMMARY

The Tuolumne County District Attorney filed a first amended information charging defendant with two counts of custodial possession of a weapon (Pen. Code,[1] § 4502, subd. (a); count 1 (knife) and count 2 (sharp instrument)), and possession of a controlled substance in a custodial facility (§ 4573.6, subd. (a); count 3 (methamphetamine)). The first amended information further alleged defendant had suffered a prior strike conviction within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d)).

A jury found defendant guilty on all counts. In a bifurcated proceeding, defendant admitted the strike allegation.

The trial court sentenced defendant to an aggregate term of eight years in state prison as follows: six years on count 1 (middle term, doubled), six years on count 2 (middle term, doubled) to run concurrent with count 1, and two years on count 3 (one-third the middle term, doubled) to run consecutive to count 1. Defendant filed a timely notice of appeal.

---

[1] Hereinafter, undesignated statutory references are to the Penal Code.

2.

# FACTUAL SUMMARY

*Prosecution Evidence*

Correctional Officer Alexandra White testified that defendant was an inmate at the Sierra Conservation Center and housed in a dormitory room with approximately 15 to 20 other inmates. The room had about eight bunk beds with sets of two lockers between each set of bunk beds. Inmates assigned to this dormitory are assigned a bunk bed and locker. The lockers have individual locks with combinations; in most cases the combinations are not shared with other inmates.

On January 11, 2023, White participated in a search of the dormitory, after all the inmates had been cleared out. White searched bunk bed No. 5 and the two lockers between bunk bed No. 5 and bunk bed No. 7. White did not find anything in the locker on the left side, closer to bunk bed No. 7. Locker No. 5 on the right side was assigned to defendant. It was locked with a combination lock and White used a master key to open it.

Searching inside defendant's locker, White found a can that contained multiple pieces of metal, a screw, outlet covers, little caps, and a sharpened "metal stock with string or yarn wrapped around it for a handle." Inmates are not allowed to possess pieces of metal because they can be made into weapons and used against other inmates or against staff. White explained that wrapping string or cloth around the metal allows someone to hold it without being cut. The locker contained several articles of indicia with defendant's name: inmate mail correspondence, letters, and defendant's state-issued inmate number which indicates he is assigned bunk bed No. 5. White also discovered a large bag of inmate-manufactured alcohol, called "pruno," located on the bottom shelf of the locker. Inmates are not allowed to possess pruno.

Outside and on top of the locker, White discovered defendant's state-issued identification and seven strips of paper, which she suspected contained a controlled substance. White explained that when inmates receive controlled substances such as

3.

spice[2] or methamphetamine, they soak them into cardstock and cut them into strips. Then they mix the strips with tea or tobacco to roll in paper and smoke or put them in water to dissolve and digest. White placed the strips of paper into a sealed bag and had them tested, which were confirmed to contain methamphetamine. The top of the locker also had black flecks from an opened teabag, rolled pieces of paper, and an individual exposed razor blade attached to a string. The razor could be used for cutting the cards into smaller pieces to mix with the tea. White explained inmates are issued razor blades enclosed in plastic for shaving, but they are not allowed to have individual exposed razor blades like the one she found. The loose tea and rolled pieces of paper are consistent with someone consuming a controlled substance.

Additionally, two weapons were found on top of the locker, hidden under a black and white striped cloth. One weapon was sharpened to a point and the other larger one was a knife about seven and one-half inches long with a wrapped handle and a sharpened point.

After the search, White sought to interview defendant. White spoke in English and asked defendant if he needed a translator. Defendant responded he could speak to her and did not need a translator. Defendant waived his *Miranda*[3] rights and told White he had controlled substances inside and on top of his locker that he smoked the day before. Defendant admitted he left some of the controlled substances on top of his locker. Before White mentioned any weapons, defendant volunteered that the larger weapon on top of his locker was not his, that it belonged to the inmate next to him, but he knew it was there. Later, defendant reached out to White to admit he used the knife to cut things.

---

[2]     White explained that spice is a synthetic cannabinoid, or genetically modified THC.

[3]     *Miranda v. Arizona* (1966) 384 U.S. 436.

4.

*Defense Evidence*

Defendant testified and agreed that bunk bed No. 5 was his but claimed the locker with the contraband did not belong to him, and that he used the locker next to it. Defendant said some lockers had combination locks, but his locker did not have a lock and was open and accessible to others. He also claimed that inmates knew one another's lock combinations and opened them all the time. Defendant was shown items from locker No. 5 such as toothpaste, a comb, the can and its contents, but he denied they were his and said he did not know where the items came from. Defendant said the mail with his name on it had been on top of his locker, a different locker. Defendant denied that the pruno, strips of paper with methamphetamine on them, sharp instruments, and knife were his.

Defendant did not remember telling White he had spice on top of his locker and that he smoked it the day before. Upon further questioning, though, defendant clarified, "I don't remember 100 percent as to what happened, but it might be possible that — about the spice and the locker." Defendant did not remember saying, "Whatever is left is what was on top of my locker. If any was in my locker, I forgot it was there." Defendant denied bringing up the weapon first when questioned by White and said, "No, it wasn't me. I don't know anything about the weapon." However, defendant agreed that he told White, "The weapon wasn't mine. It was the guy on the bunk next to me. It was his, not mine." Defendant said he saw the weapon in his hand. "He was using it for cutting fruits." He denied he told White he was going to "make needles and small screwdrivers" from the metal and electric wires. Defendant denied that the property White returned to him from the locker belonged to him, stating, "[S]he brought me the materials that belong to somebody else, and she didn't bring me my stuff. My stuff got lost." He denied that he signed for the property, and denied that he said it belonged to him.

Defendant admitted he was previously convicted of first degree residential burglary, second degree burglary, and evading law enforcement with disregard to public

sa0fety.  Defendant admitted he had used methamphetamine before going to prison.
Defendant also admitted that after the events giving rise to this case, he tested positive for
methamphetamine.

*Rebuttal Evidence*

White explained that even though defendant's urine was collected for a drug test
related to this January 11, 2023 incident, a drug test was never performed.  However,
defendant tested positive for a controlled substance on August 17, 2023, stemming from a
separate incident.

White clarified that when she spoke with defendant, she spoke to him in English
and he rejected her offer for a translator.  Defendant was able to respond appropriately to
her questions, and she did not have any concern about a language barrier between them.
White recorded her conversation with defendant and used the recording to create her
report.  Defendant told White, " 'Yes, I had spice on the top of my locker.  I smoked it
yesterday morning.' "  White reiterated that defendant initiated the conversation about the
weapon and stated, " 'The weapon wasn't mine.  It was the guy in the bunk next to me.  It
was his, not mine.' "  He also admitted he was going to use the metal pieces and electrical
wires to make things.  Several months after this incident, defendant approached White
and clearly said, "I," meaning defendant, was the one who used the knife to cut the fruit.

White stated the locker defendant claimed to be his, without any contraband in it,
did not belong to defendant.  The noncontraband locker contained items with another
inmate's name on it, not defendant's name.  The locker with the contraband contained
items with defendant's name on it and did not contain any items with anyone else's name
on it.  White explained they are required to make sure the property is returned to the
correct inmate or they get personally fined.  In this case, defendant personally identified
the property that belonged to him, which was then inventoried.  The property was
returned to defendant with the inventory sheet, and he verified that none of his items were

6.

missing.  The property items returned to defendant were from the locker with the contraband.

## DISCUSSION

### Defendant Fails to Demonstrate There Was Insufficient Evidence of Possession to Support His Convictions.

### A.    Applicable Law and Standard of Review

Defendant bears the burden of affirmatively establishing that the evidence was insufficient to sustain a conviction.  (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573–1574.)  " 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' "  (*People v. Avila* (2009) 46 Cal.4th 680, 701 (*Avila*), quoting *People v. Lindberg* (2008) 45 Cal.4th 1, 27; see *Jackson v. Virginia* (1979) 443 U.S. 307, 319 (*Jackson*).)  "In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' "  (*Avila*, at p. 701, quoting *People v. Kraft* (2000) 23 Cal.4th 978, 1053.)

It is the responsibility of the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences" from the evidence.  (*Jackson*, *supra*, 443 U.S. at p. 319.)  "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends."  (*People v. Maury* (2003) 30 Cal.4th 342, 403.)  " 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' "  (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)  If the record supports conflicting inferences, the reviewing court must presume "that the trier of fact resolved

7.

any such conflicts in favor of the prosecution," and the court must "defer to that resolution." (*Jackson*, at p. 326.)

"Possession may be physical or constructive, and more than one person may possess the same contraband." (*People v. Miranda* (2011) 192 Cal.App.4th 398, 410.) "Constructive possession 'occurs when the accused maintains control or a right to control the contraband; possession may be imputed when the contraband is found in a place which is immediately and exclusively accessible to the accused and subject to his dominion and control, or to the joint dominion and control of the accused and another.' " (*People v. Johnson* (1984) 158 Cal.App.3d 850, 854 (*Johnson*).)

Exclusive possession or control is not necessary; possession may be established by circumstantial evidence and any reasonable inferences drawn from that evidence. (*People v. Rice* (1976) 59 Cal.App.3d 998, 1003 (*Rice*).)

**B.     Analysis**

Defendant's insufficient evidence claim is limited to the possession element in each of his convictions. Defendant argues the dormitory was communal in nature, his locker was not secured, and that mere access to a communal locker does not establish that he had possession of the knife, sharp instrument or controlled substance. We conclude there is substantial evidence from which a rational trier of fact could find beyond a reasonable doubt defendant had possession of the contraband items. (See *Avila*, *supra*, 46 Cal.4th at p. 701.)

The evidence showed the locker containing the contraband belonged to defendant. White explained that inmates were assigned a bed and a locker; defendant was assigned bunk bed and locker No. 5. The locker contained indicia showing that it belonged to defendant: defendant's personal mail, correspondence, and defendant's state-issued inmate identification number showing he was assigned bunk bed No. 5. Defendant also had a state-issued identification with his name and a photograph on top of this locker. There was nothing inside the locker indicating it belonged to anyone else or was shared

8.

by anyone else. Defendant's claim that the left locker belonged to him is not plausible since it did not have any items belonging to defendant and contained indicia that the locker belonged to another inmate. Additionally, defendant made statements to White admitting the locker was his saying, "I had spice on top of my locker." When property collected from the locker was ready to be returned to its owner, defendant identified and claimed the property from locker No. 5 as belonging to him. Therefore, on this evidence, a rational jury could reasonably deduce the locker belonged to defendant. (See *Avila*, *supra*, 46 Cal.4th at p. 701 [we presume in support of the judgment every fact the jury could reasonably deduce from the evidence]; *People v. Kraft*, *supra*, 23 Cal.4th at p. 1053 [same].)

Evidence also demonstrates defendant was in possession of the contraband because it was found in a location accessible to defendant and subject to his dominion and control. (See *Johnson*, *supra*, 158 Cal.App.3d at p. 854.) We note that inmates had been cleared from the dormitory before White conducted her search. Defendant's locker was closed and secured with a combination lock, eliminating or reducing the possibility that items were moved last minute from one locker into the locked locker. There was no evidence that defendant shared his locker or combination with any other inmate. Contraband items such as pruno and sharp instruments were found inside defendant's locked and secured locker. Therefore, there is substantial evidence from which a rational jury could find beyond a reasonable doubt the sharp instruments located inside his locker were in his possession because they were found in a location exclusively accessible to defendant and no other inmate, and were subject to his dominion and control. (*Ibid*. [possession is imputed when contraband is "found in a place which is … exclusively accessible to the accused"].)

There is also substantial evidence that defendant had constructive possession of the knife, sharp instrument and methamphetamine located on top of his locker. Defendant's state-issued identification was located on top of the locker, demonstrating

9.

the top of his locker was an area where he placed his possessions and exercised control over his items. Defendant admitted he had controlled substances inside and on top of his locker and that he had smoked the controlled substances the day before. By admitting he smoked spice the morning before and that it could be found on "my locker," the evidence clearly demonstrates this was defendant's locker, defendant was aware of the controlled substances in and on top of his locker, had access to them, and exercised control over them. Even though the strips tested positive for methamphetamine and not spice, it is reasonable to infer defendant was talking about the same strips located on top of his locker, which showed recent use by the loose tea, paper rolls and razor blade. Defendant also initiated the discussion about the knife located on top of his locker, which he later admitted he used to cut fruit, further demonstrating he had access to the knife and had a right to control it. As such, evidence shows the knife, sharp instrument, and methamphetamine were in a location immediately accessible to defendant and subject to his dominion and control. (See *Johnson*, *supra*, 158 Cal.App.3d at p. 854.)

Therefore, on this record, we conclude there is substantial evidence from which a reasonable trier of fact could find beyond a reasonable doubt defendant had possession of the contraband items located in and on top of his locker. (See *Avila*, *supra*, 46 Cal.4th at p. 701.)

Defendant's arguments to the contrary do not undermine our conclusion. As discussed above, defendant's contentions that the locker was not his and that other inmates had access to it conflicted with other evidence admitted at trial. To wit, White testified that defendant was assigned bunk bed and locker No. 5, that his locker was locked, and that inmates mostly did not share their combination. White also said there was no evidence in the locker with the contraband that it belonged to anyone other than defendant. It is the province of the jury to resolve conflicts in testimony by determining the credibility of witnesses and the truth and falsity of facts. (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.) Therefore, we presume "the trier of fact resolved any such conflicts

in favor of the prosecution," and specifically here, in favor of White, and we defer to that resolution. (*Jackson*, *supra*, 443 U.S. at p. 326.)

We reject defendant's contention there was insufficient evidence he had *exclusive* possession of the contraband and that mere access is not possession. As a threshold matter, the jury was not required to find defendant had exclusive possession or control of the contraband. (See *Rice*, *supra*, 59 Cal.App.3d at p. 1003.) Moreover, the evidence supported a finding that defendant had exclusive control of the locker containing the contraband, given White's testimony the locker was assigned to defendant, the indicia of his possession of the locker inside and on top of the locker, the lack of indicia of anyone else's possession inside or on top of the locker, and that the locker was locked with a combination lock. Defendant also claimed and identified the contents of this locker as his property, which is further evidence the locker belonged to him.

Further, even though some contraband was found on top of defendant's locker, it was reasonable for the jury to have inferred that defendant had access and control over the top of his locker. This was established by evidence of his use of that space as his own, for example to set down his own personal property such as his identification card. Defendant's admissions that he smoked spice the day before and used the knife to cut fruit are evidence he had access, dominion and control over these contraband items. Therefore, it was reasonable for the jury to have inferred defendant had at least constructive, if not actual, possession over these contraband items. (*Rice*, *supra*, 59 Cal.App.3d at p. 1003; *Johnson*, *supra*, 158 Cal.App.3d at p. 854.)

Defendant's argument that the lack of a translator rendered his admissions to White unreliable is unpersuasive. Defendant claims the lack of an interpreter impaired his ability to understand and respond. However, not only did defendant reject a translator when one was offered, White testified defendant's responses raised no concern of a language barrier. Moreover, defendant's statements to White about the knife were made on his own initiative and not in response to a question. Therefore, there is no evidence

11.

that speaking in English made defendant's statements and admissions unreliable. Further, defendant raised his argument regarding the absence of a translator below and the jury rejected that argument. As noted, it is the province of the jury to resolve conflicts in testimony by determining the credibility of witnesses and the truth and falsity of facts. (*People v. Maury*, *supra*, 30 Cal.4th at p. 403.)

On this record, after viewing the evidence in the light most favorable to the prosecution, we conclude a rational trier of fact could have found beyond a reasonable doubt that defendant possessed the contraband under each count. (See *Avila*, *supra*, 46 Cal.4th at p. 701; *Jackson*, *supra*, 443 U.S. at pp. 318–319.)

### **DISPOSITION**

The judgment is affirmed.